## J. W. SHARP *et al. v.* W. D. FLY *et al.*

**VENDOR'S LIEN.** *Mortgage. Deed of trust. Sale of land. Registration.. Statement of case:* A vendor sells and conveys land by deed absolute upon its face acknowledging the full payment of the purchase money, and this deed is duly registered. A creditor of the vendee desiring to obtain security for a pre-existing debt, procured the vendee to execute a deed of trust upon the land to secure the debt, the deed stipulating for delay as usual upon the part of the creditor. The benefits of this deed were formally accepted by the trustee, and creditor joining in its execution, the deed was then duly registered. Some years afterward, when the trustee was proceeding to advertise the property for sale under the deed, the vendor files his bill claiming a lien for unpaid purchase money, and claiming priority over the trust creditor.. *Held,* that a vendor who has thus conveyed without reserving an express lien, has no specific and fixed lien upon the property, and acquires none until his bill is filed for the purpose; and if, before this be done, any other creditor secures a fixed or specific lien upon the property, he will prevail over the vendor, and a creditor who accepts a deed of trust to secure a debt stands in this attitude.

Cases cited: Wetmore *v.* Brien & Bradley, 3 Head, 723; Mackreth *v.* Symmons, 10 Hum., 375; Hamilton *v.* Gilbert, 2 Heis., 682; Burrow *v.* Carter, MS., Jackson, 1871; Cleveland *v.* Martin, 2 Head, 128; Tatlock *v.* Harris, 3 Tenn., 180; Brown v. Vanlier, 7 Hum., 249; Green *v.* Demoss, 10 Hum., 371; Ellis *v.* Temple, 4 Col , 315; Fain *v.* Inman, 6 Heis., 10; Eskridge *v.* McClure, 2 Yer., 88; Lincoln *v.* Purcell, 2 Head, 143; Dishmore *v.* Jones, 1 Col , 554; Gann *v.* Chester, 5 Yer., 205; Roberts *v.* Rose, 2 Hum., 145; Langford *v.* Fly, 7 Hum., 585; Farnsworth *v.* Bill, 5 Sneed, 531; Washington *v.* Ryan, Nashville, see reports; Wills *v.* Harris, 3 Head, 332; Furman & Co. *v.* Fisher, 4 Col., 625; Farquharson *v.* McDonald, 7 Heis., 404.

### FROM GIBSON.

Appeal from the Chancery Court. JOHN SOMERS, Chancellor.

J. T. CARTHEL for plaintiff.

SPL. HILL for defendant.

SNEED, J., delivered the opinion of the court.

The tract of land in controversy was originally sold by Lannum to Sharp by deed, with reservation of a lien for the purchase money unpaid. This deed was not registered. The complainant, Sharp, sold without conveyance to Hale and Clements, and thereupon, by an arrangement between the several parties, Fly became bound to Sharp for balance of Hale and Clements' purchase, and Sharp, in writing upon his unregistered deed from Lannum, directed Lannum to execute a deed directly to Fly to the land, and surrendered Lannum's deed to him for cancellation. A deed was thereupon executed by Lannum to Fly, without reservation of lien, and acknowledging payment of the price. By this arrangement the complainant, Sharp, came to be the owner of a note for $4,000, executed by Fly, to which Branch signed his name as joint obligor. The deed by Lannum to Fly was executed and delivered on the 3d of September, 1860, and registered on the 6th of the same month and year. No lien was reserved, as already stated, upon the face of said deed, and the price of the land was admitted to be paid. This note of $4,000 fell due in December, 1861, and is for the balance of the purchase money due to Sharp, the debt of Lannum, on account of the original purchase by Sharp having been long since paid. About the 14th of December, 1860, Fly being

very largely indebted to E. M. Apperson & Co., conveyed the land in controversy, and a large amount of other property, to W. S. Jones as trustee, to secure said debts. The deed was signed by Fly, the maker, and by Jones, the trustee, and its benefits accepted by the beneficiaries, E. M. Apperson & Co., who signed their names thereto, and it was at once registered in Gibson county, where the land lies. The trustee, Jones, upon default of payment, proceeded in time to sell portions of the property and credit the debts secured *pro tanto;* and he having died in 1864, the defendant, Quigley, was afterward appointed trustee, and proceeded to close out the trust by a sale of the property. Thus the whole of the property was, from time to time, sold under the provisions of the trust, except the land in controversy. A large amount of this property, all, indeed, except the land in controversy, was sold to one Green Williams, who thereupon executed a deed of trust to A. Delap on the same property to secure the deferred payments, which were two notes of $23,000 each. Upon closing out this trust of Green Williams, there was still a large balance due to Apperson & Co., much of the personalty having been lost by the war; and in December, 1867, the trustee, Quigley, proceeded to sell the land in controversy for its payment, and the same was purchased by Apperson & Co., and credited upon their debt. In May, 1867, however, the complainant, Sharp, with Lannum as co-complainant, filed his bill, making Fly, Branch and the trustee, Quigley, defendants, to enforce his alleged vendor's lien upon the land for the

unpaid note of $4,000. This bill was demurred to upon the ground, among others, that the beneficiaries were not made parties. The demurrer was sustained, with leave to complainant to file an amended bill, which was done accordingly. The amended bill charges a fraudulent combination between the parties to the trust to cover up the property of Fly, and thus defraud his creditors, and relies upon this ground of relief as well as that of the vendor's lien, as set up in the original bill, and charges that Apperson & Co. had actual notice of the existence of said lien before the execution of the trust. In the progress of the cause the defendant, Branch, put in a cross-bill claiming to be a partner of Fly in the purchase of the land in controversy, and insisting upon his lien as such upon the land for his interest in the unsettled partnership. In the progress of the cause also the defendant, Fly, was permitted to plead and rely upon his discharge in bankruptcy. All the defendants deny the fraud imputed to them, and assert that the transactions were fair and *bona fide,* and the defendants, Apperson & Co., very positively deny all knowledge or suspicion that the complainant or any other person had a lien upon the land so conveyed. But there is testimony that after the conveyance the trustee, Jones, admitted that he was advised or was of opinion that the complainant's note was a lien on the land at the time the deed of trust was executed. These are the general features of the case without unnecessary detail, and the statement is perhaps sufficiently full to illustrate the equities of the parties.

It will be seen from these facts that the main question to be determined is, whether the complainant, Sharp, has a vendor's lien on the land which can overreach the interest acquired by Apperson & Co. by virtue of the trust. This question must be decisive of the case, as we are unable to see any ground whatever upon which to impute any fraudulent purpose or contrivance to the defendants, Apperson & Co., throughout these complicated transactions, nor can we discover in the case any foundation for the claim of Branch upon this land upon the score of his alleged partnership. The whole case must turn upon the question whether the complainant had an actual subsisting lien at the time the lien of Apperson & Co. attached, and the question whether, in such case, notice to the trustee of the complainant's claim was notice to the beneficiaries, will be immaterial if it should turn out that the complainant had no lien at all, whatever might be the opinion or information of the trustee to the contrary. 3 Head, 722; 10 Hum., 375.

It seems to be settled that where there are several successive alienations of land, and the final conveyance is made by the first vendor to the last vendee, the last vendor, all intermediate liens being discharged, is substituted to the rights of the first vendor, and may enforce his lien for unpaid purchase money as against his vendee. *Hamilton* v. *Gilbert*, 2 Heis., 682; *Burrow* v. *Carter*, MS., Jackson, 1871; 1 Hilliard on Mort., 678. The question of the vendor's lien depends not upon who executes the title,

but who sold the land to the defendant against whom the lien is sought to be enforced. It is contended on the part of the complainant that the execution of the deed of trust by Williams to Jones upon most of the property conveyed by Fly to Jones was, in legal effect, a merger or novation of the debts due to Apperson & Co., and operates as an extinguishment of Apperson & Co.'s interest in the assignment by Fly to Jones. There are several reasons why the doctrine of novation can have no application in this case. In the first place, no such case is made in the pleadings. Secondly, it does not appear affirmatively that the property conveyed by Williams to Delap to secure the deferred notes of $2,300, each was of value sufficient to extinguish all of the debts of Apperson & Co. Thirdly, no such intention to release the lien on the land conveyed to Jones and not sold to Williams, is made to appear, and this intention is never to be presumed. But the fact stands to rebut such an intention, that much of the property conveyed by Williams to Delap was lost during the war, that Apperson & Co. did not release or quitclaim their rights in the land in controversy, and that there is still a large portion of Apperson & Co.'s debt still due after the foreclosure of Williams's trust. It is a familiar principle that a mortgage being given as a security for a debt, the general rule is that no mere change in the mode and time of payment, nothing short of the actual payment of the debt, or an express release, will operate as a discharge of the mortgage. The lien lasts as long as the debt. 2

Head, 128; 13 Gray, 170; 13 Sm. & M., 393; 1
Hilliard on Mort., 482. So it is held that a sale of
mortgaged property, under a power given in the mort-
gage, and the taking of the purchaser's twelve months'
bond for the purchase money, does not, by the laws
of Louisiana, operate as an extinguishment of the
mortgage debt. *Union Bank* v. *Stafford*, 12 How. U.
S., 327. The doctrine of novation in the civil law
is but the doctrine of merger in the common law—
"the substitution of a new obligation for an old one,
which is thereby extinguished." It was a principle
in the civil law that there must be an express inten-
tion to novate the *animus novandi*. A novation is
never presumed. A case of novation at common law
is put in *Tatlock* v. *Harris*, 3 Tenn., 180: "If A
owes B £100, and B owes C £100, and the three meet
and it is agreed between them that A shall pay C the
£100, B's debt is extinguished, and C may recover
that sum from A." But it must appear in every
case that the taking of other securities or liens, or
any change in the time or manner of payment was
intended by the parties as a shifting of the liability
from one debtor to another. Thus it is held that
the delegation by which the debtor gives to the cred-
itor another debtor, who obliges himself toward such
creditor, does not operate a novation unless the cred-
itor has expressly declared his intention to discharge
the debtor who made the delegation. 13 La. Am.,
238. Now it cannot be pretended that the defend-
ants, E. M. Apperson & Co., have in any manner
whatever intimated a purpose to relinquish the security

they held for the balance of their large debt by the transaction between Jones and Williams. Even if they had become parties to said trust by signing the same, no presumption could be raised that they intended to relinquish their lien upon the land in controversy, in the absence of any such express intention, or of any circumstance whatever to indicate such a purpose. On the contrary, the very fact that they retained their original lien on the land in controversy, under the circumstances, must be accepted as a circumstance to show a contrary intention or a sagacious foresight that much of the property conveyed by Williams to Jones was not the best indemnity for debt in the aspect of public affairs then existing. The case is simply that of a creditor, having just debts secured by mortgage on all his debtor's property, sells off a part of it and takes a trust upon it from the purchasers, and it turns out that this is not enough to pay his debt, upon what principle of equity can he be precluded from looking to the balance of his original security to save the unpaid balance? Unless he has manifestly intended to give up his original indemnity, we cannot presume it. Such, as we have seen, is the concurrent doctrine of both the civil and the common law upon this subject.

This brings us to the consideration of the question whether, under the facts, the complainant had a lien upon the land in controversy. The conveyance under which he claims it is upon the records of the county, reserving no lien and acknowledging upon its face that there is no purchase money due. The de-

fendants, being just creditors in a large amount of money, take a deed of trust upon this and other property, and they accept the trust and become parties thereto by signing the same. They have actually gone forward through their trustee in closing out said trust to the extent of selling all the property included therein except the land in question; and the bill charges and the answer of the trustee admits, that they were proceeding to sell this land in controversy to discharge the unpaid balance of the debt before the bill was filed to enjoin it. It seems to us that these facts vindicate the defendants' right, even within the doctrine of the case of *Brown* v. *Vanlier*, 7 Hum., 249. In that case the deed of trust was made to Wallace Dixon to secure certain creditors, but no steps whatever had been taken to close the trust, nor had the beneficiaries in any way signified their acceptance of the same by signing it or otherwise. The whole argument of that case rests upon the idea that the vendor's bill was filed before any steps were taken to close the trust conveyance. Thus it is said, in that case, that the vendor's equity is such an equity as will be enforced against creditors claiming under such conveyance where the vendor files his bill before any steps have been taken to close the trust conveyance. *Id.* 241. It should be distinctly noted, says the argument, that I am willing to admit that if the conveyance is closed before the vendor endeavors to enforce his equity, or even if the first step be taken in a legal forum by the creditors, such creditors might obtain a priority, although notified of the existence of

the vendor's lien.  *Id.* 244.  This, we think, states the true doctrine, except that the same effect must necessarily result, whether resort be had to a legal forum or not, in cases where the legal title is vested in a trustee with full power to close the trust without resort to a legal forum, and where he is proceeding accordingly, before the vendor's bill is filed, as in this case.  This doctrine has been followed in many cases reported and unreported by this court.  *Green* v. *Demoss,* 10 Hum., ——; *Ellis* v. *Temple,* 4 Col., 315; *Fain* v. *Inman,* 6 Heis., 10.  It may be well to note that Chancellor Cooper, in his edition of Yerger's Reports, in a note to the case of *Eskridge* v. *McClure,* 2 Yer., 88, refers to the case of *Brown* v. *Vanlier,* 7 Hum., ——, and the other cases on the subject, and states his opinion to be that the late cases contain the sounder doctrine, and more consistent with our registration laws.

The confusion which has arisen in professional opinion upon this subject has sprung from the varied interpretations given to the word "executed" in the opinion of Turley, J., in *Brown* v. *Vanlier.*  The opinion, as will be seen, adopts the argument, and the argument maintains the doctrine above stated. But the court, in stating the result, uses the word "executed," so that it has been mistaken to mean foreclosed, while giving such a sense to the word is manifestly at war with the doctrine maintained in the argument which is adopted by the court.  A trust of this nature is simply inchoate as long as it is a mere private matter between the bargainor and the trustee.

In that chrysalis state it may be revoked by the bar-
gainor.    It must be accepted by the beneficiaries, or
benefit must be taken under it by them before it is
a trust.    It is, then, an executed trust, and in this
sense, in the opinion of the writer, Judge Turley used
the word, and not in the sense of foreclosure, which
would put the court in direct antagonism to the ar-
gument they had adopted.    Thus it is said a trust is
executed where the legal or equitable estate passed to
the trustee its creation. · 1 Prest. Est., 190.    So it
is said if a debtor voluntarily convey property to
trustees for the benefit of creditors, and the transac-
tion is not communicated to them, and they do not
execute the deed, and are not in any manner privy
to it, the deed operates only as a power to the trus-
tees, and is revocable at any time by the debtor.
Hill on Trustees, 130.  These and many cases re-
ferred to show that the word "executed" is used in
the sense of acceding to or accepting the deed.    *Id.*
131.    So Judge McKinney's explanation of the term
is consistent with both the English and American au-
thorities, that an executed trust is one that has be-
come a complete trust by the vestiture of the rights
it purports to create.    Before the creditors have elected
to take under the deed, the assignee is rather the
trustee for the debtor than for them; when they have
accepted the assignment by claiming or taking a bene-
fit under it, the assignee becomes their trustee, and
they assume by virtue of the assignment the character
of lien creditors.    Or if they have, by filing a bill,
or in any other manner made themselves parties to

the assignment, by claiming or receiving a benefit from it before the vendor's bill is filed, they must prevail over the tardy claim of the vendor. 1 White & Tudor's Equity Cases, 250. This equity of the vendor after he has parted with his title without reservation, is not a lien until established by the decree of the court, and must always yield to any intervening lien which has attached before the filing of the bill. Thus it is held that it cannot prevail against creditors claiming under a deed of trust made for their benefit, or under a mortgage, for they have more than an equity or lien—they have the legal title. *Dunlap* v. *Barnett*, 5 Sm. & M., 702.

We need not discuss this subject at length, but refer, for the argument, to several cases decided by this court *ubi supra*. In one of those cases we have recently said, "It is clear that creditors who have acquired a valid, specific lien upon the estate, are not to be assimilated to volunteers and purchasers under the vendee in the sense of the law, and if this floating equity, misnamed in judicial parlance 'the vendor's lien,' be not quite a myth, but a mere capacity to acquire a lien if he chooses, then this same capacity belongs to others who are creditors, and have rights just as meritorious as his. And we hold that the simple knowledge on the part of the creditors that the vendor, sleeping on his rights from year to year, may, if he chooses, acquire a lien as the creditor himself is about to do, cannot, in a forum of conscience, impair the value or affect the validity of the lien so acquired by the creditor. In such case there is no

*mala fides,* no fraud, no improper advantage taken by the one of the other, but the race of diligence as just creditors being open to both alike, the one has lost and the other won." *Fain* v. *Inman,* 6 Heis., 12. The result is, that the decree must be reversed and the bill dismissed.

Concurrent opinion, McFarland, J.

The question, in substance, is this: A vendor sells and conveys land by deed absolute, upon its face acknowledging the full payment of the purchase money, and this deed is duly registered. A creditor of the vendee, desiring to obtain security for a pre-existing debt, procured the vendee to execute a deed of trust upon the land to secure the debt, the deed stipulating for delay as usual upon the part of the creditor. The benefits of this deed were formally accepted by the trustee and creditor joining in its execution, and the deed was then duly registered. Some years afterward, when the trustee was proceeding to advertise the property for sale under the deed, the vendor files his bill claiming a lien for unpaid purchase money, and claiming priority over the trust creditor. This is the question to be settled.

The question is very important, and if it is to be regarded as an open one, should receive a thorough consideration in all its aspects. The case of *Green* v. *Demoss,* 10 Hum., decided more than twenty-five years ago, announced a doctrine upon the subject which has been regarded by many of the profession as settling the question, though in fact it may have

been but a *dictum* in that case; it was, however, approved by this court in the case of *Ellis* v. *Temple*, 4 Col., and in *Fain* v. *Inman*, 6 Heis., and repeatedly recognized in other cases—see *Lincoln* v. *Purcell*, 2 Head; *Dishmore*, v. *Jones*, 1 Col—and we think has been generally accepted as the law; but the question now having been reopened, we must determine whether to adhere to the rule thus adopted, or go back to the doctrine which it is insisted was established by the earlier cases.

I am of opinion that the rule, as substantially announced in *Green* v. *Demoss*, should be adhered to; that it is sound in principle, and supported by reason and authority, and is in every view just and equitable. That rule is, that a vendor who has thus conveyed without reserving an express lien, has no specific and fixed lien upon the property, and acquires none until his bill is filed for the purpose; and if, before this be done, any other creditor secures a fixed or specific lien upon the property, he will prevail over the vendor. . And a creditor who accepts a deed of trust to secure a debt, stands in this attitude. This rule, in some of its applications, is conceded on all hands—it was conceded in the argument of this case that the lien of a judgment given by statute will prevail over a vendor, and so the lien acquired by the levy of an execution or attachment, where such liens are acquired before the vendor's bill is filed.

The first question to settle is, what is the nature

of the vendor's equity or lien in such a case? Is it a fixed and specific lien attaching to the land from the date of the sale? That it is not, seems to me to be definitely settled. For if it be a fixed lien attaching to the land before the bill is filed, I see no reason why it should not prevail over all other liens to which it is prior in time, either the lien of a judgment execution or attachment, and even after a sale under execution or attachment, but as early as *Gann* v. *Chester*, 5 Yer., it was said this lien could not prevail over other creditors who might acquire rights to the property. In that case other creditors had obtained mortgages that they had foreclosed, and under which they had bought the property. The same was held in *Roberts* v. *Rose*, 2 Hum., where the land had been sold under execution and bought by a party having full notice that the purchase money was unpaid. And in *Brown* v. *Vanlier*, 7 Hum., in the argument of Judge Cooper, which was adopted as the opinion of the court, it is conceded that "by our registration laws and the policy of this State in subjecting lands to sale by execution for the payment of debts, the lien, as it existed at common law, has been modified, and that by the registration laws the vendor's lien, as every other unregistered lien, is postponed to the rights of judgment creditors and *bona fide* purchasers without notice, . . . that is to say, creditors may acquire rights and enforce them, if they are diligent, without noticing the vendor's lien." That the lien of a judgment execution or attachment, if prior in time to the filing of the vendor's bill, will

prevail, I think, has long been regarded as settled, and in fact was not denied by the learned counsel who argued this cause.    See also *Ellins* v. *Temple*, 4 Col.

It was argued, however, that the lien of judgment execution or attachment is superior to the lien of a vendor before bill filed, only because made so by statute.   But this is evidently a mistake, as there is no statutory provisions declaring such liens superior to any other.   Such liens are given by law, but are not declared superior to any other lien.   This results from the nature and force of the conflicting claims. If, however, the vendor's equity be a fixed lien on the land, it should certainly prevail over the lien of a judgment execution or attachment; and I am likewise unable to see why it should not prevail over a trust creditor or mortgagee who has foreclosed his deed of trust or mortgage and bought the land for his debt, or over a purchaser at execution sale.   If the vendor's lien was superior to the mortgagee before he had foreclosed and bought the land, or had begun proceedings for that purpose, why is it not equally so afterward?   How is the mortgagee's rights as against the vendor, after he has thus bought the land, any stronger than before, as he has not become an innocent purchaser?   An express lien retained by the vendor in his deed would not be thus defeated by a mortgagee; and if the implied lien be regarded as a fixed and specific lien, it certainly could not be thus defeated by a sale and purchase by the mortgagee, or by a sale under execution or attachment.   But this

court decided in *Fain* v. *Inman*, 6 Heis., without dissent, that where the trust creditor had caused the trust deed to be foreclosed, and had bought the land for his debt before the vendor's bill was filed, that the former should prevail. It seems to me that if the mortgagee's claim be inferior to the vendor, he cannot make his claim superior by taking steps to foreclose his mortgage or deed of trust, unless possibly such superiority be acquired by force of judicial proceedings instituted, but in *Fain* v. *Inman*, the creditor caused his deed of trust to be executed, and became purchaser without judicial process.

Strong objection is made to the doctrine that the lien of the vendor in such case is only an equity or right to file a bill, and that his lien only becomes fixed by filing of his bill. This, it is said, is giving him the right to file a bill to enforce a lien when he has no lien to enforce that which he has not. Other instances might be cited in which the right is given to resort to a court of equity, and a lien acquired only upon the filing of the bill. These cases are statutory, it is true, but it shows there is nothing objectionable in such a rule. Besides, the rule that the filing of the vendor's bill fixes his lien, is certainly well settled. As before stated, it is well settled that the lien of a judgment execution or attachment, if acquired before the filing of the vendor's bill, will prevail over it; but if the vendor's bill be filed first, it is equally clear that it will prevail. So that the proposition that it is the filing of the bill that fixes the lien of the vendor, although denied in

its application to a case of conflict between such lien and that of a mortgagee, is not denied in its application to other liens on the property. If the rule be sound in one case, it must be in the other. So that this part of the proposition is undoubtedly sound, as is virtually conceded in the argument of Judge Cooper in *Brown* v. *Vanlier*, 7 Hum., which is the principal authority relied upon to support the contrary view. The only question then remaining is, whether a creditor who accepts the security of a deed of trust duly registered to secure a pre-existing debt, thereby acquires a valid and fixed lien upon the property. I maintain that this proposition cannot be resisted. The argument of Judge Cooper in *Brown* v. *Vanlier* was, that our registration laws only protected creditors and *bona fide* purchasers without notice from the secret or unregistered lien of a vendor, and that the creditor claiming under a voluntary assignment made by a failing debtor to secure a pre-existing debt, was neither a creditor nor a *bona fide* purchaser without notice; not a creditor because he had no judgment, and not a *bona fide* purchaser because he has parted with nothing on the faith of the conveyance; but he admits that there is a clear distinction between creditors who claim under a general assignment made to assignees by a failing debtor for the benefit of all his creditors and a creditor to whom a conveyance has been directly made to secure contemporaneous advances, or in satisfaction of pre-existing debts, and refers to section 1229, Sto. Eq. Jur. This section, and the preceding, shows that there is a clear distinction between a gen-

eral assignment, as to assignees in bankruptcy, and a particular assignment to specified creditors for their security or satisfaction. The latter will be protected if without notice, and I should say, even if be to secure pre-existing debts, if further time was given on the faith of the security, and upon this ground this would be to put the mortgagee upon the footing of a purchaser without notice. But I put the mortgagee upon the footing of a creditor, and not a purchaser, and I apprehend the error in the argument of Judge Cooper is, in assuming that the word creditors, as used in the registration laws, means only judgment creditors. Such, at that time, seems to have been the meaning given to the word creditor, as used in the act of 1801 against conveyances to defraud creditors. *Langford* v. *Fly*, 7 Hum. This was overruled by *Farnsworth* v. *Bell*, 5 Sneed and Patrick Ford, note; and this meaning was perhaps attached to the word creditor in other statutes, but no such limited meaning is now attached to the word, at least I think it should not be so limited in its application to a question like the present.

The argument of Judge Cooper concedes that the creditor might acquire rights in the property without noticing the vendor's lien, but that he is not a creditor unless he has judgment. But this proposition cannot now be maintained. That a creditor without judgment may, by virtue of a deed of trust or mortgage executed for his benefit and accepted by him, although for a pre-existing debt, acquire a fixed lien upon the property, is now well settled. Such a lien

has been several times held to be superior to the lien of an attachment, and in a recent case at Nashville of *Washington* v. *Ryan*, opinion by Judge Deaderick, goes so far as to hold, as does also the case in 4 Col., that the presumption of law that the beneficiaries accept the benefits of the deed, nothing being alleged to the contrary, will be sufficient to give the trust creditors priority over an attachment. Other cases referred to in that opinion left this question in doubt, but all concede that if the creditors in fact accept before the attachment is levied, they will prevail. See *Wills* v. *Harris*, 3 Head, 332; *Furman & Co.* v. *Fisher et al.*, 4 Col., 625; *Farquharson* v. *McDonald*, 7 Heis., 404. These cases are not put upon the ground that the mortgagee or trust creditor are purchasers without notice, but they are put upon the footing of creditors. Their claims were pre-existing debts. It is insisted that a trust creditor can only obtain priority over a vendor by executing his deed of trust, or by taking steps to execute it, not by merely accepting it; that such was the holding of the court in *Brown* v. *Vanleer*, and so it seems to have been. But the cases last above referred to distinctly hold that the trust creditor may acquire such a valid lien on the property as to defeat a subsequent attachment by merely accepting the benefits of the deed; and in the last case, if nothing else appears, the presumption of law that he accepts will be sufficient.

By accepting the deed he acquires a lien that will defeat a subsequent attachment, but he acquires no lien against the vendor until he executes his trust

deed, or takes steps to execute it. This seems to be manifestly inconsistent, but the inconsistency does not stop here. As said, these cases hold that a trust conveyance thus accepted by the creditor will give him a lien superior to the lien of a subsequent attachment, and certainly it would for the same reason be superior to the lien of an execution, subsequently levied, or a judgment. But as we have before said, a lien fixed by the levy of an attachment or execution, or the statutory lien of a judgment before the filing of the vendor's bill, will prevail over the vendor. Then how is it possible the vendor is to prevail over the trust creditor who has accepted the benefits of the trust before the vendor's bill is filed? Suppose we should have a case of conflicting claims between three parties, first, in time a creditor who has formally accepted the benefit of a deed of trust upon the property to secure his debt duly registered; second, in time an execution or attachment duly levied upon the land; third, in time a vendor who files his bill to enforce his lien for unpaid purchase. The trust creditor's claim is superior to the attaching creditor, the attaching creditor's claim is superior to the vendor, and yet we are told that the vendor's claim is superior to the claim of the trust creditor. There is no escape from the dilemma unless some one of these positions be abandoned. It seems to me that the only way out of the dilemma is to hold the vendor's lien superior to the others first acquired, simply because it is a secret and unregistered lien. We must either do this or put it upon the ground of a fixed

lien, and then it should prevail against all others, and prevail against all except innocent purchasers without notice.

If this be regarded as an open question upon which the court is required to lay down a rule to be followed in the future, upon which side of the question is the law, the equity? Here is a vendor who sells and conveys his land by a deed absolute upon its face acknowledging the full payment of the purchase money. This goes upon the register's books as notice to all the world. A creditor of the purchaser, desiring to secure his debt, and seeing this deed upon the register's books, accepts a deed of trust, agreeing to give further time upon his debt. He relies upon this security perhaps for years, forbears all other efforts to secure his debt, but finally, when he comes to have his deed of trust executed, the original vendor comes forward with a note for unpaid purchase money, of which no notice was given, and claims priority. He seeks to set up a secret and unregistered lien against the trust creditor, who has certainly a fixed lien on the land; the creditor certainly has the legal title, and at least an equal equity. Take the illustration used in *Gann* v. *Chester*. Suppose the vendor, after making an absolute conveyance without reservation, immediately takes from his vendee a mortgage or deed of trust to secure unpaid purchase money, but neglects to have it registered. In such case it cannot be denied that he would be postponed to a subsequent mortgage or deed of trust first registered. Upon what principle is it that the secret, unregistered lien,

resting only in the parol agreement of the parties, or in the mere presumption of law, shall be held as against creditors superior to the mortgage duly executed but not registered. If the vendor takes his lien in the form of a mortgage duly executed, but not registered, it is bad; but if he allows it to remain in the secret parol agreement of the parties, either express or implied, it is good. It may be said that the creditor might, by enquiry, ascertain the existence of the unpaid purchase money. In many cases this would be impracticable. There can be no danger of injustice to the vendor; it is quite easy for him to put his lien beyond all question, and give notice to the world either by retaining the title or an express lien upon the face of his deed. Regarding the beneficiary in a trust deed as a purchaser, which he may be, where he advances money or releases other securities at the time, notice or want of notice might be material; but regarded as a creditor seeking to secure his debt, the question of notice is immaterial, as the want of notice cannot help him, to give notice cannot injure him, or affect his conscience. The idea of converting an absolute sale and conveyance into a trust for the benefit of the vendor, is a purely arbitrary assumption directly opposed to the real truth of the transaction. So manifest is the want of equity in such cases that many States have abandoned the vendor's lien altogether. And Judge Cooper, upon whose argument *Brown* v. *Vanleer* was decided, now concedes that the latter is probably the better doctrine, and certainly more in accordance with

the spirit of our registration laws. See note to *Esk-ride v. McClure,* late edition of 2 Yerger. The changes, he says, have been made by the judicial legislation of the latter cases, but the whole doctrine of vendor's lien was established by judicial legislation; it is the creature of a court of equity, and may properly be modified by the same power that created it.

I think the contrary rule would be a decided step backward, and greatly unsettle what is now regarded as the settled law, and moreover, to establish a rule not sound or equitable in itself.

FREEMAN, J., delivered the following dissenting opinion:

This bill is filed to assert a vendor's lien for payment of a balance of purchase money of about $4,000, due by note, signed by W. D. Fly and J. L. Branch. The note is not produced, but is sued on as a note lost or mislaid.

The facts necessary to be stated on this branch of the case are, that Lannum sold the land in controversy to Sharp, and made him a deed which was never registered. Sharp sold to Clements and Hale, and they to Fly. When the last sale was made the parties met; and by mutual agreement the deed from Lannum to Sharp, and title bonds given in the other sale to Hale and Clements, and assigned to Fly, were taken up. Lannum made a deed direct to Fly, and Fly gave the note in controversy to Sharp in discharge or satisfaction of the amount due from Clements and Hale to Sharp, or rather assumed their debt,

giving this note for it. The deed of Lannum is September 3, 1866; no lien is retained on the face of it for payment of the purchase money, the deed having the usual recital of its payment. Fly was deemed wealthy at this time, but failed in a few months afterward, making an assignment in the form of several deeds of trust, December 14, 1860, to W. A. Jones, trustee, to secure a large amout of existing indebtedness to E. M. Apperson & Co., and also are to secure a contemplated advance to Fly of $25,000. The war coming on soon after, no money was ever advanced under this arrangement, so that this deed is out of the case at present. The case is clearly that of a deed of trust conveying this land as a security for a pre-existent debt, and must be decided on this issue.

Before entering on this discussion it is proper to dispose of the question presented in argument as to whether the lien was not waived by taking the note of Fly with Branch as surety. It suffices to say on this, that taking such surety on the note would raise a presumption of waiver of the vendor's lien, nothing more appearing. This presumption, however, may be rebutted by showing that such was not the intention of the parties. That such was not the intention in this case is made out beyond question by the testimony of Branch, showing that a lien was retained on the land in the face of this note thus signed. There is no evidence, so far as we have seen, to contradict this statement.

This brings us directly to the main question inti-

Sharp *v.* Fly.

mated above, as to whether a vendor's lien, given by law, where the land is conveyed by deed, can prevail over a conveyance or assignment made and recorded to a trustee, with power to sell the property and appropriate proceeds to the payment of pre-existing debts. In other words, whether an assignment as security for a pre-existent debt will take precedence of and override the vendor's lien given by law for the payment of unpaid purchase money.

We now proceed to the discussion of the question on principle and authority. What, then, is the nature of the right of a vendor of land by which he can ask a court of equity to decree its sale for the satisfaction of his debt, and an appropriation of its proceeds to its discharge? When does this right arise and begin to be, at the time of the sale or by filing a bill or bringing a suit? Does it spring up out of the contract of sale, or is it the result and product of suit brought? These questions have in them the elements for the solution of the question involved, if reasoned out in accord with sound legal analogies.

In the leading case, *Macreth* v. *Symmons*, decided by Lord Eldon in 1808, 1 Lead. Cases in Eq., 340, the principle was laid down as the then established doctrine of the courts of equity in England, that the vendor's lien for purchase money unpaid will be enforced against the vendee, volunteers and purchasers with notice, or having equitable interest only, even though a receipt was given or endorsed on the back of the deed, unless this lien was shown to have been relinquished by the vendor. This case was one greatly

considered by the Lord Chancellor, and decided after exhaustive examination of the previous decisions of the court. The doctrine had been put before this in the case of *Pollexfen* v. *Moore*, 3 Atkins, 272, L. C. Eq., 344, by Lord Hardaricke, on the ground that the "vendee was, from the time of the agreement or contract of sale, a trustee as to the purchase money for the vendor." We cite this case to show how the doctrine has been fixed in the jurisprudence of England, from which country we derive it. Since then it has never been doubted, we believe, in that country. The cases are cited in Leading Cases in Eq., vol. 1, 359, and the rule stated that this lien prevails against all persons claiming under the vendee, except innocent purchasers without notice who have paid their money and procured the legal title. In accordance with this view it is held that the assignees of a bankrupt will be affected by the lien, although they may have had no notice of its existence, they taking subject to all the equities attaching to the estate in the hands of the bankrupt. So also will the assigns under a general assignment for the benefit of creditors. L. C. in Eq., vol. 1, 361; Bro. C. C., 302. In notes of the American editor the same doctrine is laid down as prevailing in most of the States of the Union, though some courts recognizing it, considered it a doctrine contravening the general policy of this country against secret liens. *Ibid*, 362–3, *et seq.* So in this State as early as 1831, in the case of *Ross* v. *Whitson*, 6 Yer., 52, these doctrines were held as established beyond all doubt, citing numerous

cases, both English and American. In all the cases it is worthy of remark the right of the vendor is spoken of as a lien, and one growing out of the contract of sale. In the cases *Sheratz* v. *Nicodemus*, 7 Yer., 9, and *High and wife* v. *Battle*, 10 Yer., 106, this court held this lien to be a specific one in the nature of a mortgage attaching, says the court, "specifically to the land, whether in the hands of the original vendee or of a purchaser from him with notice." In the latter case, decided in 1836, it was held that no judgment need be obtained at law in order to ascertain the amount of the debt against the personal representative of the deceased vendee, but that the bill would lie against the land, making the heirs alone parties, and this on the principle that the "land was debtor, whether in the hands of the vendee or his heir." *Ibid*, 188. In this form the doctrine was introduced into our State, and thus imbedded in our jurisprudence. Thus it stood, too, at the time, and long after our system of registration had been established and substantially perfected.

These principles being established, it follows that this right is a substantial one, as old as the equity jurisprudence of England, and at an early day fixed into our own system. It is also clear, both on reason and authority, that it springs out of the contract of sale, and results from it, and attaches to the land, the land becoming debtor from this period. If it does not spring up at the time of the contract of sale in the nature of things, when does it spring up? In every bill filed to enforce it, whether you call it

a lien or an equity, the facts to be charged are, that
land had been sold, the defendant had purchased and
the purchase money remained unpaid. These allega-
tions are always followed with a prayer for an en-
forcement of the lien growing out of the facts stated,
by a sale of the land subject to the charge. Without
the allegation of such a sale, no lien would appear,
and with this allegation it is uniformly recognized and
enforced. Why, then, by a mere change of name,
calling it an equity, assume a change of the nature
of the right? Is not such an assumption purely ar-
bitrary, with no reason to be given for its basis? Is
it not more in accord with the history of this lien
and its nature, to say that it is a lien, a long recog-
nized right given to the vendor of land by a court
of equity, enforcible as such equitable rights are en-
forced in a court of chancery, because not recognized
in courts of law. We think that it is as substantial
a part of the contract in our law as is the note given
for the purchase money, and attaches at once in favor
of the vendor on completion of the contract. If this
be so in principle and authority, how can he be de-
prived of it? Alone, as we think, by one having a
superior equity, such as an innocent purchaser for
value; one who has paid his money, parted with some-
thing innocently on the faith of the land with no no-
tice of the existence of the lien, or as in case of
*Gause* v. *Chester*, 5 Yer., 207, where the deed of
trust had been executed by sale of the property be-
fore the bill filed, on some similar case.

Thus stood the law in our State, when the ques-

Sharp *v.* Fly.

tion was for the first time distinctly presented as to which should succeed, the vendor with his lien, or the trustee and beneficiaries holding the property under a registered conveyance in trust to pay pre existent debts. In that case the argument of Mr. Cooper was based on the proposition, first, that creditors claiming under a voluntary conveyance made to a trustee to secure pre-existing debts, were not "creditors and purchasers under the registration laws; and second, that the vendor's lien would be enforced against such a conveyance, when his bill was filed before any steps taken in enforcement of the trust;" in other words, as he states it: "creditors claiming under a trust conveyance take the property conveyed, subject to any equity which might have been enforced against it in the hands of the assignor." The court, Judge Turley delivering the opinion, states the point decided by the court, in the following emphatic language—language too clear to be misunderstood: "The only question we deem necessary to notice in this case is, whether a vendor of land, when the purchase money has not been paid, can enforce his lien therefor against a trustee and *cestui que trust,* when the land has been conveyed to secure debts, when the bill is filed for that purpose before the trust is executed." "We have no doubt," says the learned judge, "that he may." He then refers to the case of *Pettigrew* v. *Turner,* 6 Hum., 440, as virtually deciding this same question, and then refers to Mr. Cooper's argument as exhausting the subject for the reasons in support of the decisions made.

2—VOL. 9.

Thus stood the law until the *dicta* of Judge Mc-Kinney, in the case of *Green* v. *Demoss*, 10 Hum., 376, where he states the result of the decision of *Brown* v. *Vanlier* to have been, that the lien was held to prevail against a voluntary assignment by deed of trust for benefit of antecedent creditors, where the bill is filed before anything is done in execution of the trust, or in other words he adds, "before the trust is *accepted*, as was the meaning intended to be conveyed in that case." With deference to the statement of Judge McKinney, it is clear the court intended no such meaning as he gives to the word executed, as the idea of acceptance by the creditors under the deed; no such question was before the court, nor could have been, on the facts in *Vanlier* v. *Brown*. Besides, the court expressly say, that the lien shall prevail, if the bill is filed before the trust is executed, not before the assignment is accepted; thus going further than Mr. Cooper's proposition, that is, before any steps were taken to close the trust—a proposition not well in accord with the main one that follows, that the conveyance is subject to every equity which might have been enforced against it in the hands of the assignor; for if this be the nature of such an assignment, then until the property had been freed from it by a sale in execution of the trust, no preliminary steps could be held to have any effect on the rights of the parties.

This view of the case of *Vanlier* v. *Brown* is taken with emphasis and sustained in an opinion delivered by Chief Justice Deaderick at last term of this court at Nashville. See MS. opinion, *Washington* v. *Ryan et al.*

In this case of *Demoss* v. *Green,* we believe for the first time in our reports, is introduced the idea of the vendor's right being a "mere equity," and not a specific lien on the land until a bill is filed to enforce it. No authority is cited by the learned judge for this distinction. The cases we have cited on this subject in Tennessee definitely lay down a contrary doctrine, that is, that the lien is a specific one on the land, and in some it is said in the nature of a mortgage.

This distinction cannot be maintained, we think, upon any sound principle or legal analogy. If it is not a lien on the land, or if the language is preferred, an equity fixed on the land growing out of the sale, then on what does it fix itself? Is it a lien, or equity, or charge on nothing, that simply exists in idea, until the vendor shall locate it by filing his bill to enforce it? Is it not rather an incongruous view of such a right, that a contract must be alleged by which land has been sold and purchase money unpaid, and then as soon as such a proceeding is instituted and bill filed, immediately the equity locates itself against the particular land, but was unlocated and unfixed before. In other words, that a vendor can raise a right and make it specific on land, that is, attach it to land as a charge, by simply filing a bill for that purpose, alleging a contract of sale and the purchase money unpaid? Upon all sound legal analogies a suit is commenced to enforce an existent right, not to create it. A suit to enforce a lien or equity by sale of particular property, necessarily involves the

pre-existence of the right sought to be enforced. In
fact, such is the basis of all bills filed in our courts
to sell land for payment of the purchase money. It
is generally conceded that if this lien be specific, that
is, fixed on the land by virtue of the contract of
sale, then it must override the right of a voluntary
assignee. That it is so fixed and specific is clear, as we
think, or else it is a lien existing on nothing, a charge
with nothing charged, an equity with nothing subject
to it, each proposition involving a legal contradiction.
We therefore conclude the lien is specific, fixed and
fastened on the land by the contract. It is true, in
the case of *Fain* v. *Inman*, 6 Heis., the learned judge
delivering the opinion of the court follows in his rea-
soning the theory of Judge McKinney, in *Green* v. *De-
moss*, but the case before him did not raise the ques-
tion, and consequently it could not have been decided
by the court. This is clearly seen by the statement
of the question under investigation in commencement
of the opinion, which is as follows: "The controversy
is between the vendor of land who has sold and con-
veyed without an express reservation of the lien, and
who seeks to assert his lien for purchase money un-
paid, and the *purchaser* at a trust sale under the trust
deed of the *vendee made and foreclosed* before the filing
of the bill." The case of *Gann* v. *Chester*, 5 Yer.,
had settled this question, and no other was before the
court; so that we have no difficulty in that case as
an authority in the present, the questions being en-
tirely different. In this case the vendor's bill is filed
before a sale under the trust deed, and is precisely

the case of *Brown* v. *Vanlier,* where it was held that the vendor should prevail.

We would arrive at the same conclusion reached above, from the position and character of the claim of a trustee and the beneficiaries under the deed of trust. What is the trustee but a voluntary assignee of the vendee? He is not a purchaser at all, much less an innocent purchaser. While the naked dry legal title is conveyed to him, he is still but an assignee with a power to sell and appropriate to the payment of debts. He is so treated in all our standard writers on the subject. Mr. Story, Eq. Jur., sec. 1288, says: "The lien will also prevail against assignees claiming by general assignment under the bankrupt and insolvent laws, and assignees under a general assignment made by a failing debtor for benefit of creditors, for such assignees are deemed to possess the same equities only as the debtor himself." So it is said by Mr. Burrell, in his work on assignments, p. 352, the conveyance conveys the property "in the same plight and condition as the assignor held it, and will not defeat the pre-existing liens, nor can the trustees be regarded as purchasers, nor the *cestui que trust* creditors within the Registry Acts." Mr. Perry says, "as a matter of course, all persons having liens on the trust property prior to the assignment are not affected by it—their rights remain as before the assignment." Section 596.

These authorities and many more that might be cited, accord precisely with the view we have taken of this question. We add, that according this right

of the vendor to be properly but an equity, the same
result would follow, for all agree that a *bona fide
purchaser* of property, purchasing and paying his money
with notice of an equity, would take subject to the
equity, and certainly all the cases and authorities hold
this in case of a vendor's lien; all authorities agree
that if he purchases without notice, he takes the prop-
erty fund from the equity.    Then the only question
is, whether a voluntary assignee is an innocent pur-
chaser or equivalent to one.    On this question there
has never been a doubt, we believe, and it is uni-
versally conceded in this State that he is not an in-
nocent purchaser.    If not, then he takes subject to
the equity, unless he is protected by registration laws;
and this is not insisted on, for if he were within this
protection he could at once interpose this as a certain
and available defense and thus end the contest.

But it is said, that the opposite view is more in
accord with the spirit of our registration laws.    Per-
haps this may be so, but it is clear beyond all ques-
tion, and we believe is conceded, that the trustee and
beneficiary are not within their provisions.    They are
not the creditors referred to in these laws, nor are
they *bona fide* purchasers without notice, as therein
provided for.    If they were, then the statute would
give the protection and the controversy, as we have
said, be at an end.    If not included in these laws,
may it not be plausibly argued that as the law stood
at their passage, with the lien well recognized as a
specific charge on the land, the omission to provide
for the case left the rights of the parties to stand

Sharp *v.* Fly.

precisely as if no such law had been passed? or even amounted to a legislative affirmance, that the law should not be changed as to this question by these laws. The expression of one thing may fairly be held to exclude the other not included in it; not being included in the provisions of our registration laws, not being innocent purchasers or purchasers at all, on what higher ground can these creditors stand than the vendor whose purchase money is unpaid?· He, too, is a creditor with a lien or an equity. His lien is prior in time to the assignment. It has in it the highest equity, being the price of the very land sought to be appropriated by the voluntary assignment to the trustee for the benefit of other creditors. Ought this land to be taken as the vendee's and appropriated by his voluntary act to the payment of other debts before he has paid for it himself? The trust creditors have paid nothing for the land, have parted with nothing, hold their debts as before the conveyance; the trustee has paid nothing and is only a voluntary assignee, an agent of the vendee and creditors for sale of the land, technically clothed with the legal title and charged with the trusts of the deed, but nothing more. If the land shall sell for more than the debt secured, the vendee is entitled to the surplus. If the debts are discharged, either by the assignee paying them before closing the trust, or by a sale of part of the property, or in any other way, the property returns to the vendor or assignor without a reconveyance in our State. See 3 Head.

Some stress seems laid on the fact of acceptance

of the deed of trust as favoring the position of the beneficiaries. We cannot see the force of this. Acceptance of the benefits of the deed is but an assent to the assignment for his benefit. But the assent to a wrong or proposed wrong done to the rights of another, cannot sanctify the wrong nor raise an equity in favor of the party so assenting, superior to the right of the party being wronged. This must be the result in order to maintain the conclusion sought from the fact of acceptance. Under these circumstances, we confess we are unable to see the superior equity of the assignee and beneficiaries under such a deed. We think the simple question is, whether a vendee can by his voluntary act defeat the lien given by law to the vendor for his purchase money, and create or confer a higher right than he himself has on mere volunteers to the property assigned. We think all the analogies of law and the soundest principle forbid this being done.

While there may be some difficulties presented arising out of this view, yet not more nor so many as from the opposite, and we think it sustained by the large weight of authority and by the sounder reason. It is true there may possibly arise a case where a careless creditor may take a deed of trust to secure his debt and agree to delay, in consideration of the security, in ignorance of the existence of the lien for unpaid purchase money. But this need not be, if he uses common diligence, as the assumption is, that he is wronged by the existence of the vendor's deed registered, which shows no lien. He can easily enquire

Sharp v. Fly.

of the vendor whether the land has been paid for. If he learns it has not, he has notice and cannot complain. If the vendor should mislead him by a false statement, he would be estopped to enforce his lien and the party be protected. We can see no great weight in such a possible injury as has been supposed.

I think there are incongruities unreconcilable with settled principles in the opposite view. A vendor has sold his land on a credit; the first note may not be due so as to file his bill "to locate" his equity; a creditor at large who has a note on the vendee asks it to be secured by a deed of trust. His note may not be due. He holds his note, does not give time or part with a single right under his contract; the land is conveyed to a trustee for his benefit. The vendor comes into a court of equity to enforce his lien for the purchase money; the holder of his note files his cross-bill to enforce the deed of trust and takes the land and the vendor goes unpaid. Is not this a case where a man should be required to do equity before he asks it? I think so. But a stronger case may be put. The other debt may have been the consideration money or balance of such consideration, due for a tract of land sold to the vendee. The party having this balance may have already enforced his lien or had a decree to sell, when the vendor in the other case makes his contract. He may sell and buy the land for half his debt. He can then, having an execution or right to one, coerce the vendee to convey the land by deed of trust, accept what he has thus

obtained, and thus, after having had his own lien enforced, fix his debt on the other land sold, and defeat the vendor's claim for payment. Surely this is not equitable or just. He is not an innocent purchaser, only a volunteer; but accepting the conveyance to a third party for his benefit, with no superior equity whatever, he gets a higher right than his debtor and assignor had, and by some influence not to my mind apparent, shakes off the equity of the vendor for the payment of his purchase money—an equity as old as the equity jurisprudence of England. He has parted with nothing for this advantage, paid not a cent, nor lost a single thing for which he bargained when his debt was created. His debt may well have been created before the purhcase of the land by his debtor and therefore not on the faith of it. These, with many other difficulties, I am totally unable to reconcile.

Again, it has long been settled in this State, that the suspension or satisfaction of a precedent debt is not a sufficient consideration to give the endorsee of a bill or note the position of an innocent holder for value as against the equity of a third party enforceable against the endorser. The reason is, the endorsee parts with nothing, gives neither credit, money or goods for the note, sustains no loss or incurs any new liability. 1 Hum., 468; 2 Hum., 192. In the case of *Rhea* v. *Allison,* 3 Head, 180, the court say, the same principle is applicable to real estate, and add: "If any distinction as to this question could exist between the two species of property, we suppose it to be in favor of the purchaser of commercial paper; and so

we think the reasons would strongly preponderate in favor of the negotiability of such paper." So in the case of *Guinn et als.* v. *Locke*, 1 Head, 111, it was held that where land had been sold subject to the equity of redemption, and the party entitled to redeem had been prevented from redeeming by fraud and artifice of the purchaser, and this purchaser had conveyed the land to a third party in payment of a pre-existing debt, such purchaser was held bound by the equity because he was not "an innocent purchaser, but took the conveyance for a pre-existent debt."

These principles have long been known as the settled law of this State. Now to their application in this case. A creditor cannot take a conveyance of the title for pre-existent debt directly to himself, and get the land free from any equities that may exist against it. Yet he may, under the view maintained in the case under consideration, have the land conveyed to a trustee or third party, in order that it may be sold *to pay* his debt in the future, hold it freed from the equity and override the highest of all equities against it, the payment of the purchase money by the purchaser. In the one case the land is conveyed directly to him and he gives up his note against the debtor and assumes it paid, yet takes the land subject to the equity, because he parts with nothing; while in the other he still retains his note, has all his remedies on it, and yet by simple assent, either actual or implied, secures the payment of his debt by sale of the land, and may become the purchaser himself at that, thus by indirection securing what he could

not do directly. In other words, an unexecuted and incomplete appropriation of the land, a matter of contract *in fieri* as yet, is made stronger and more effective than a completed conveyance made directly to himself in payment and satisfaction of the debt. How these things can be, consistently, is what I am unable to see.

We might add, the difficulty is so well settled, that if a party purchase and pays his money with notice of the equity of the vendor, he takes subject to it; yet here he gets clear of it, by paying nothing, only by giving his assent to the wrong, either express or implied, regardless of notice. I am unable to assent to this view of the law.

We think the whole case on the other side rests on the proposition, that it is based on a nearer analogy to our registration laws in their spirit, than the view we have taken. That it is not within them, is settled by all the decisions of our courts; in fact, as we have said, if embraced by their lien, we would only have to look to the question of registration, and the priorities shown by this would be conclusive.

As to the vendor's lien being but an equity, so in fact is the beneficiary's rights under a deed of trust. He must go into a court of equity to enforce it as a trust for his benefit. The vendor's equity is prior in time, and I think stronger in right and justice.

We therefore conclude that the lien is a specific one fixed on the land, by the contract of sale; that the assignee in trust and beneficiaries are but volunteers, and as such stand in the shoes of the assignor;

that they must necessarily take subject to the lien, and can acquire by the voluntary assignment no higher rights in the land than the assignor had, but take it with all charges fixed on it at the time; that the case is not within the registry laws, nor are the parties protected as innocent purchasers.

Therefore, the trust not having been executed or sale made before the filing of the bill, the vendor's lien must prevail over the claim under the deed of trust.