N. J. THOMAS, Agent, et. al., v. J. V. HOLLIS.

Western Section. June 22, 1928.

No petition for Certiorari was filed.

58

W. R. Landrum, of Trenton, for appellant.
Elder & Elkins, of Trenton, for appellee.

SENTER, J. The only question presented on this appeal is as to whether a note for the sum of $216 executed by J. V. Hollis and payable to his mother, Mrs. S. E. Hollis, is barred by the statute of limitations, or more properly whether there has been an acknowledgment of the debt and a new promise to pay the same within six years prior to the filing of the bill in this cause.

It appears that J. V. Hollis executed two separate promissory notes payable to his mother, Mrs. S. E. Hollis, now deceased; one of said notes being for the sum of $105, and the other for the sum of $216, each of said notes providing for interest and attorney's fees. After the death of Mrs. S. E. Hollis all of the heirs at law, in order to save the expense of regular administration of the estate, entered into a written agreement, by the terms of which complainant, N. J. Thomas, one of the heirs at law of Mrs. S. E. Hollis, deceased, was appointed agent and attorney in fact to wind up the estate. This instrument, which is made an exhibit to the original bill, and which was signed by all of the heirs at law of Mrs. Hollis, deceased, recites in substance that the said Mrs. S. E. Hollis, at the time of her death, was the owner of certain personal property, consisting of cash deposited in a bank amounting to $90, and two notes on J. V. Hollis, one for $105 and the other $216; and one other note on M. E. Hollis for $100; and also an account against J. V. Hollis for the sum of $30; and an account against M. E. Hollis of $19.75; and other personal property and effects described in the instrument. The instrument further recites that the said Mrs. S. E. Hollis did not owe any debts at the time of her death, except the doctor's bill for treatment during her last illness, and the funeral and burial expenses. It is further stated in the instrument that it is the desire and purpose of all the parties as children and heirs at law to wind up the estate at the least expense, without having regular legal administration, and to this end that N. J. Thomas be appointed agent and attorney in

fact to take charge of and wind up said estate out of court. The instrument then recites as follows:

"Therefore, in consideration of the premises, we, N. J. Thomas, Lou Ring, Mattie Sharp, Willis Weeks, M. E. Hollis and J. V. Hollis, as the children and only heirs at law of the said Mrs. S. E. Hollis, deceased, do hereby make, constitute and appoint the said N. J. Thomas, of Gibson county, Tennessee, our true and lawful attorney in fact, for us, and in our name, place and stead, to make demand and collect all moneys whatsoever and notes and accounts belonging to the estate of the said Mrs. S. E. Hollis, deceased, and to sue for same if necessary, and to receipt for all such moneys, notes and accounts so collected by him, and he is authorized and directed to convert all the remainder of said estate into cash by either public or private sale as soon as practicable; and when said moneys, notes and accounts are collected and said remainder of the personal property is reduced to cash, the said J. N. Thomas is authorized and directed out of the proceeds to pay all the just debts of the said Mrs. S. E. Hollis, and he is further authorized and directed to purchase and have erected and pay for same a double rock or tombstone to be erected at the graves of the said Mrs. S. E. Hollis and husband, J. B. Hollis, deceased, at a cost not to exceed in the aggregate $175; and the residue of said estate, if any, he will divide equally among the signatory parties hereto, a one-sixth part each."

This instrument was signed by all the children and heirs at law, including defendant J. V. Hollis.

The original bill filed in this cause sought a recovery against the defendant J. V. Hollis on both notes above referred to. The defendant filed an answer in which he admitted the $105 note, and tendered the amount of the same, with accrued interest thereon and the attorney's fees as provided in said note, and all the costs of the suit accruing to that date, and which amount was paid into court by the defendant at the time of the filing of his answer. The answer denies liability on the $216 note, dated November 19, 1917, alleging that the $216 note is barred by the statute of limitations of six years, and the defendant pleads the statute of limitations in bar of said note, interest and attorneys fees thereon. The answer further alleges that the defendant has never recognized said note as a binding obligation on him and has not promised to pay same or any part of same since said note became barred by the statute of limitations of six years.

The answer also sets out at some length that his deceased mother lived with him and made her home with him since the death of his father, some sixteen years prior to the death of his mother, except about seven months during the year 1918 while he was in the army;

that during the whole of that time he lived on his mother's farm but that he paid her rent on same for each and every year; that there was an agreement between his mother and himself that during the first ten years, the defendant then being unmarried, she would bear one-half of the household expense, and that after his marriage, she was to pay one-third of the household expenses; these amounts to be for her board, etc.; that his mother never paid her part of the household expenses as agreed upon, and that at the time of her death she was indebted to him for necessaries furnished her by him in a sum in excess of $500. He alleges in his answer that at the time he signed the instrument, appointing N. J. Thomas agent and attorney in fact to wind up the estate, all the parties knew the agreement he had with his mother, and knew that she was indebted to him for her support and maintenance, and thinking that complainants would be fair with him and make an allowance to him out of Mrs. Hollis' estate for this expense and for the care and attention he had given her for several years, he signed the instrument. He further avers that notwithstanding this indebtedness which his mother owed to him, he was willing to pay the $105 note with the interest and attorney's fees, but relies upon the statute of limitations as a bar to the $316 note.

Upon the hearing of the cause, the Chancellor held and so decreed, that since the $105 note had been paid into court, with the interest, attorneys fees and court cost accruing to the date of the tender, that note was no longer involved. The Chancellor further held and decreed that the $216 note, interest and attorneys fees thereon was barred by the statute of six years limitation, and that there had been no new promise to pay said note since the same became barred, and dismissed the bill at the cost of complainants, except the cost already tendered and paid into court by the defendant with his tender. From this decree the complainants have appealed to this court, assigning errors. The assignments of error present but the single question, and that is as to whether by the action and conduct of the defendant, and his statements made after the death of his mother amounted to an acknowledgment of the debt and a new promise to pay same.

Under the assignments it is contended for complainants that the signing of the instrument by the defendant was of itself an acknowledgment of the debt, and that the recitals in the instrument directing the agent and attorney in fact named in the instrument to collect said notes, and if necessary to sue on the same, and to distribute the proceeds as provided therein, amounted to an acknowledgment of the debt and a promise to pay. It is further contended for complainants that statements made by the defendant after the death of his mother to the effect that a debt never became out of date to an honest man, coupled with an agreement subsequently made that he would give to each of the other heirs a personal note for their respective amount of

his obligation to the estate, was and did constitute a new promise to pay the debt.

Assuming that these facts are shown by a preponderance of the evidence, the question then is was there a new promise to pay this debt after the running of the statute of limitations, and such as to put the debt within the statute of limitations?

We think it well settled that the mere recognition of a debt by the person who contracted the same will not prevent the operation of the statute of limitations against it. In Warren v. Cleveland, 111 Tenn., 174, it is said:

"The law is that the mere recognition of a claim or debt will not prevent the operation of the statute of limitations against it. It requires not only a recognition but a distinct and unconditional promise to pay it to prevent the running of the statute."

The authorities are numerous in support of the above statement of the law on the subject.

In the instant case it appears that the defendant did make statements to the members of the family who had gathered at his home shortly after the death of Mrs. Hollis, to the effect that "an honest man's note never ran out of date and that he expected to pay it if it was fifteen years old". This is the strongest statement that the record discloses the defendant to have made with reference to the payment of the debt. In this statement the defendant did not make an unconditional promise to pay the debt, at most it was but a statement recognizing the debt, and stating that he *expected* to pay the debt.

In the case of Alexander v. Muse, 112 Tenn., 234, it appeared that the complainant in that case had sold her brother her interest in the tract of land, taking his note for the purchase money, and secured the payment by a trust deed executed at the same time. The note was not paid, and the deed of trust was not foreclosed, but the defendant executed a new note which recited that it was a renewal of the former note "for land which is secured by mortgage which is still in force". The bill in that case alleged that there had been new promises to pay within the bar of the statute, and upon this feature of the case, the Court of Chancery Appeals held that the bill charged that before the statute had run against the notes the complainant and defendant had an interview, in which she told her brother that it would be better to calculate the interest on the note and renew the same, and that the defendant replied that he was busy and would do so, "but that an honest man's note never ran out of date, and that she was in no danger". The defendant answered under oath, the oath not being waived, and denied the conversation as alleged, or the making of any renewal promise. The complainant testified in her deposition: "Thrice in the last six years I know he promised to renew the note, but claimed he was busy and said that an honest man's note never went out of date". This appears to have been all the evidence, and it was

held that it was not sufficient to overturn the denial in defendant's sworn answer, by the Court of Chancery Appeals. On appeal to the Supreme Court, it was held that this holding by the Court of Chancery Appeals is sustained by authority, citing cases. However, in the body of the opinion by the Supreme Court on appeal, it would appear that independent of the question as to whether the evidence referred to was sufficient to overturn the denial in the sworn answer of the defendant, that it would still be insufficient to remove the bar of the statute. The court, after referring to the rule in the case of Warren v. Cleveland, supra, to the effect that there must be an express promise to pay, or an acknowledgment of the debt, accompanied by an expression of willingness to pay it, states:

"There is no express promise to pay made out here, but only an indefinite promise to renew it sometime, with a very weak and indefinite excuse to avoid at present. The general expression that an honest man's note never went out of date is the expression of a very good sentiment by very evasive and general language."

There were other questions made in that case which are not involved in the present case, but it would appear that a statement made that "an honest man's note never went out of date" is not equivalent to a new promise to pay so as to remove the bar of the statute. Another significant fact is that in the instant case this note was about eight years out of date at the time of the death of the payee, and no demand had ever been made for its payment and no new promise to pay had ever been made. The statements alleged to have been made by the defendant at a meeting of the family group, were not made to an administrator, nor had there at that time been an agent or an attorney in fact appointed to wind up the estate. Hence, it was not a statement addressed to the payee of the note, or to an administrator authorized to collect the note, or to the agent and attorney in fact, who was subsequently appointed with authority to collect. It is true the statement was made in the presence of the other children and heirs at law, and they were, of course, interested in the estate, but they had no power to collect the note, or right to demand its payment. It is also to be noted that there was no express promise to pay, but the mere statement that he expected to pay it.

Under the facts, as disclosed by the record, we concur in the finding of the facts as found by the Chancellor to the effect that the $216 note was barred by the statute of limitations as appeared from the face of the note, and that there had been no new promise to pay such as would avoid the operation of the statute of limitations. We find no error in the decree of the Chancellor. All assignments are overruled and the decree of the Chancellor is affirmed. Appellants and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.