FIRST NATIONAL BANK OF SPARTA *v.* JAMES A. YOWELL.*

(*Nashville*, December Term, 1926.)

Opinion filed June 11, 1927.

1. BILLS AND NOTES. Note materially altered without consent of maker. Recovery, in absence of fraud.

While the general rule is that the holder may not fall back on the original contract or consideration where the note has been materially altered, yet the cases seem to be harmonious, where the alteration is made under an honest mistake of right and not fraud, a recovery may be had upon the original consideration. (Post, p. 432.)

Citing: 3 R. C. L. 1110 and 1112; Vogle v. Ripper, 34 Ill., 100, 65 Am. Dec., 298, 17 Am. Rep., 105 (note); Otto v. Hoeff, 89 Texas, 384; Walton Plow Co. v. Campbell, 35 Neb., 173, 16 L. R. A., 469; Kennell v. Muncey, 1 Peck, 273; Stroud v. Rankin, 61 Tenn., 74; Columbia Grocery Co. v. Marshall, 131 Tenn., 270-278; Daniel on Neg. Inst., vol. 2, p. 1413.

2. SAME. Renewal note. Not an extinguishment of original demand.

In the absence of an agreement between the parties that it is to be received in payment, the common-law rule prevails that any commercial paper delivered or promissory note of the debtor executed is not an extinguishment of the original demand. (Post, p. 436.)

Citing: 8 C. J., 569; 30 Cyc 1194; Bartlett v. Brooks, 4 Ky. L., 336; Hutchins v. Stanley, 86 Kan., 739; State Bank v. Mutual Tel. Co., 123 Minn., 314; Anno. Cases 1915 A 1084; Johnson v. Barrilla, 27 Ore., 251, 60 Am. State Rep., 717; Gates v. Union Bank, 58 Tenn., 326-329; Bank v. Buchanan, 87 Tenn., 32.

Citing and distinguishing: Dies v. Bank, 129 Tenn., 89; Hill v. Bostick, 18 Tenn., 410; Nichol v. Bate, 18 Tenn., 429; see Farmers Savings Bank v. Mercantile Co., 139 Iowa, 246; 23 L. R. A. (N. S.), 889; Hall v. Stevens, 116 N. Y., 210, 5 L. R. A., 502; State

---

*As to effect of alteration of instrument made in good faith, see 3 R. C. L., 1112; 1 R. C. L. Supp., 990; 6 R. C. L. Supp., 222.

Bank v. Mutual Tel. Co., Anno. Cases, 1915 A 1084; Sections 119, 123 and 124 of the Uniform Instruments Act. 5 Uniform Laws, annotated, p. 457.

### 3. SAME. Same. Stamping. "Paid." Mistake.

If the cancellation by stamping "paid," the original note, upon its renewal, is made under a mistake, it is inoperative to discharge either the debt or instrument. (Post, p. 439.)

Citing: Markle v. Hatfield, 2 Johnson, 455.

---

*Headnotes 1. Aleration of Instruments, 2 C. J., section 157; 2. Alteration of Instruments, 2 C. J., sections 98, 159; 3. Bills and Notes, 8 C. J., section 793; Payment, 30 Cyc., pp. 1194, 1196; 4. Bills and Notes, 8 C. J., section 841 (Anno).

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —Hon. JAMES B. NEWMAN, Chancellor.

WM. A. HUME, for appellee.

W. A. KNIGHT, for appellant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal is from a decree overruling a demurrer to a bill filed to recover on a certain promissory note. The demurrer challenged the right to recover on this note on the ground, in substance, that it appeared from the bill that this note had been cancelled and extinguished by the execution and delivery to the complainant-holder of a renewal or extension note of like amount and with the same payor and payee. It further appeared that suit had been brought by complainant on said renewal note

and recovery denied because it was shown that said renewal note had been materially altered by the raising of the interest rate thereon without the consent of the maker. Following the dismissal of its former suit on the renewal note, this suit was brought, on the theory that the renewal note, being an unenforceable evidence of a valid obligation, did not extinguish the original obligation and restored, or left open, the right of recovery on the original note.

The bill not only fails to show affirmatively that the alteration was fraudulently made, but charges that the change in the interest rate was made at the time the renewal was accepted under circumstances and upon representations of the endorser, who arranged for the renewal, which, while not effective to bind the maker, indicated good faith on the part of the complainant-holder.

The opinion of this court in *Columbia Grocery Co.* v. *Marshall,* 131 Tenn., 270, 278, relied on by counsel for appellee, has application here. In that case recovery on the original debt was denied, when notes had been executed and accepted therefor and then materially altered by the holder, but this was put expressly on the ground that the alteration had been fraudulently made, and the opinion clearly recognizes the right of the holder, in the absence of a showing of fraud, to recover on the original obligation, which, in the instant case was the note sued on.

While the general rule is that the holder may not fall back on the original contract or consideration where the note taken has been materially altered, 3 R. C. L. 1110, yet "the cases seem to be harmonious upon the proposition that where an alteration is made under an honest mistake of right, and not fraudulently and with a view to gain an improper advantage, a recovery may be had

upon the original consideration of the instrument.'' 3
R. C. L. 1112, citing authorities which clearly sustain this
text. In a leading case, *Vogle* v. *Ripper,* 34 Ill., 100, 85
Am. Dec., 298, the notes were altered so as to call for a
higher rate of interest. It was held that while the iden-
tity of the instrument was destroyed, and recovery could
not be had thereon, finding that it did not appear that
the alteration was made fraudulently, recovery was grant-
ed on the original consideration. The court said, ''we
think the intention with which the alterations were made
is a material fact. The character of the act, and the effect
of it, depend upon the intention with which it was done.''
And again, ''when the alteration was not fraudulent,
although the identity of the instrument may be destroyed,
we think it should not cancel a debt, of which the instru-
ment was merely evidence. If there was no attempt to
defraud, there is no reason why a court should not assist
the creditor as far as it can consistently.'' In a note in
17 Am. Rep., p. 105, the same rule is laid down.

In *Otto* v. *Hoeff,* 89 Tex., 384, the note was altered so as
to bear interest from date instead of from maturity.
While holding the alteration material, and that the note
could not be recovered on, the right of recovery on the
original consideration was recognized, the alteration not
having been made with fraudulent intent. The cases are
reviewed and those in apparent conflict are distinguished.
In addition to many cases cited, the court quotes from
Daniel on Negotiable Ins., Vol. 2, p. 1413, as follows:
''When an instrument has been materially altered it can-
not be sued on in its altered form, nor read in evidence
to support an action even when brought by a bona-fide
holder without notice; but when the party making the
alteration discharges the burden of proof upon him by
showing that the material alteration was made by mis-

take and without fraudulent intent, the right of action upon the consideration for which it was given remains."

The principle of the general rule appears to be that, "no one should be permitted to take the chance of committing a fraud without running any risk of losing by the event when it is detected." But this principle does not apply in the absence of fraudulent intent.

To the same effect is *Walton Plow Co.* v. *Campbell*, 35 Neb., 173, 16 L. R. A., 468, wherein a non-negotiable note was changed to bearer. The court found the alteration to have been fraudulently made and applied the general rule and held the debt evidenced by the note and secured by a mortgage cancelled. However, the intention was declared to be controlling, and it was held that where the alteration was "innocently made, under an honest mistake of fact . . . while the alteration vitiates the instrument, it would not defeat a recovery upon the original consideration for which the note was given."

An early Tennessee case, *Kennel* v. *Muncey*, 1 Peck, 273, was an action of debt upon a note of hand which the defendant alleged to have been altered from $1764 to $1794. While it was held that the alteration vitiated the note so as to cut off recovery thereon, recovery was allowed under a second count on the original consideration, the note not being an extinguishment of the precedent demand on which it was founded. The question of the extinguishment of the debt by the making of the alteration does not appear to have been raised or considered. In *Stroud* v. *Rankin*, 2 Bax., 74, it was said: "In most of the cases supposed to hold that the giving of a note leaves the original demand in full force, it will be found that the note itself was not an effective and valid security in the hands of the payee, as in the case of *Kennel* v. *Muncey*,

Peck, 273, where the note was claimed to have been ren-dered invalid, and not enforceable, by reason of an alteration without the consent of the maker,'' etc. This language would seem to recognize as established the right of a holder of an instrument which has been rendered invalid by his alteration to fall back on the original consideration; but we think this general statement is subject on principle and authority to the modification that the holder must show that in making the alteration he acted without faudulent intent, but innocently and under a mistaken apprehension of right. Such, according to the allegations of the bill which the demurrer admits to be true, are the facts in the instant case.

The pertinent language of the opinion in *Grocery Co. v. Marshall,* supra, was as follows: "Thus, if a holder of a promissory note makes a material alteration in it after its execution but without any design to defraud, and in the belief that he had a right to alter it in order to make it conform to the original agreement of the parties, such alteration does not deprive the holder of the right to elect to disregard the note and to sue on the original obligation, provided the note was not accepted as payment thereof.'' As has been seen, this is undoubtedly the rule and fits the facts of the instant case, unless the concluding qualifying proviso has application here.

This proviso has no peculiar relevancy to the case of an altered note, but applies generally to payments by notes or bills. It is difficult to conceive how it could have application, however, as between a maker and payee to a mere renewal or extension paper, in the same form and amount and with identical parties. The general rule is thus stated in 30 Cyc. 1194: "In the absence of an agreement between the parties that it is to be received as payment, the common-law rule which prevails in England

and has been adopted without question in nearly all of the States in this country, is that a draft or bill of exchange, acceptance, order, or promissory note of the debtor is not a payment or an extinguishment of the original demand.''

And with special reference to renewals of notes and bills, it is said in 8 C. J., 569, that, ''insofar as the taking of a renewal or new bill or note for an existing bill or note is concerned, it is generally held that the new bill or note is not a payment of the original instrument, in the absence of an understanding or agreement to that effect.'' Many cases are cited, and in the notes it is said, ''mere renewals of notes are not payments,'' *Bartlett* v. *Brooks,* 4 Ky. L., p. 336; and, ''a new note taken in exchange for an old one is a renewal of the former obligation,'' *Hutchins* v. *Stanley,* 88 Kan., 739; and, again, ''where it is not agreed that an unpaid renewal note shall discharge the original note, the holder may surrender it and sue on the original.'' *State Bank* v. *Mutual Tel. Co.,* 123 Minn., 314, Anno. Cases 1915 A, 1084.

In *Johnson* v. *Barrills,* 27 Oregon, 251, 50 Am. State Reps., 717, it is said that, ''nothing is better settled than that accepting a note is not payment of an account, nor is accepting one note in renewal of another payment of the old note, unless there is an agreement that the note should be accepted in payment.'' In this State, the cases of *Gates* v. *Union Bank,* 12 Heisk., 326, 329, and *Bank* v. *Buchanan,* 87 Tenn., 32, both tend to support the view taken in the authorities hereinbefore cited.

Most of the cases in which the right to sue on the old note has been considered are those in which the liability of sureties and other parties claiming to have been prejudiced by novation has been involved. Such was our case of *Dies* v. *Bank,* 129 Tenn., 89, in which sureties on

the original note were held not released, but which, on its facts has little application here. Also, *Hill* v. *Bostick,* 10 Yerg., 410, and *Nickol* v. *Bate,* 10 Yerg., 429, wherein changes in the parties were made in taking renewal or extension notes and the endorser held released. More in point is *Farmers Savings Bank* v. *Mercantile Co.,* 139 Iowa, 246, 23 L. R. A. (N. S.), 889, in which the validity of the renewal note being challenged, the holder was permitted to amend its suit and sue in the alternative on the old note and was given recovery thereon against all the parties, including sureties. The headnote reads: "The giving of a renewal note has no effect, in the absence of an agreement therefor, to discharge either the makers or endorsers of the original obligation, if for any reason not chargeable to the wrong or fraud of the holder, the renewal proves to be invalid."

An apt illustration of another class of cases in which the question of payment has arisen is found in *Hall* v. *Stevens,* 116 N. Y., 201, 5 L. R. A., 502, wherein a note (or draft) was accepted as payment. Here Hall sold cattle to defendants and took in payment a draft of defendants' Buffalo bank on a New York bank, payable to the order of Hall. Latter and before collection the Buffalo bank failed. Hall sued defendants, who had not endorsed the draft, on the original consideration and was denied recovery, the court finding that the circumstances indicated an intention to accept the draft in payment. We have no such case on its facts before us.

In an elaborate note to *State Bank* v. *Mutual Tel. Co.,* supra, in Anno. Cases 1915 A, 1084, the instant subject is fully reviewed. With respect, first, to *valid* renewal notes, it is said that, "the authorities are agreed that whether a renewal note operates as a discharge of the note of which it is a renewal is dependent on the intention

of the parties." Again, "it is clear, however, that a re-newal note does not operate to discharge the note in renewal of which it is given, unless there is an agree-ment that it shall have that effect." Numerous author-ities are cited for these general propositions. The An notator then deals with circumstances evincing intention, express agreements, burden of proof and presumptions, etc. But, as more strictly applicable to the instant case, under the subhead "Invalid renewal note," it is said, "the general rule is that where the renewal note is invalid it does not operate to discharge the original note," citing many cases, some of which have been hereinbefore men-tioned.

Looking to the Uniform Instruments Act, we find it pro-vided by Section 119 that an instrument is discharged "by the intentional cancellation thereof by the holder;" but Section 123 provides that "a cancellation made unin-tentionally or *under a mistake*," (italics ours), as alleged in the bill in this case, is inoperative to discharge the note; and by Section 124 it is provided that, "where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided." These appear to be the pertinent provisions of the Act. It is conceded that the renewal note in this case was materially altered and was avoided. However, the annotator (Vol. 5, Uniform Laws, Annotated, p. 457) notes that, "the alteration of a note does not discharge the debt for which it was given," with the exception that, "a fraudulent al-teration extinguishes the original indebtedness," citing a number of cases. The annotator further says, "when the plea of alteration is interposed by the defendant, the plaintiff has the right to amend, and seek a recovery on the same indebtedness for which recovery was sought in the original petition, relying not on the note, but on

the original consideration, *or prior indebtedness, in renewal of which the note was given,*" (italics ours), this language having particular application to the facts of the instant case, and being in harmony with text book and case authorities herein before reviewed.

From the provisions quoted relating to the effect of cancellations, it appears that if the cancellation, by stamping "paid" thereon, for example, is made under a mistake, it is inoperative to discharge either the debt or the instrument. This would seem to be a statutory recognition of the right to recover on the note here sued on, which the bill shows was cancelled by marking "paid" on the face thereof, under a mistake, upon the understanding of the holder's agent, and on the representation of one of the parties liable on the instrument, who conducted the negotiations for the renewal, that the change in the interest rate on the new note taken in renewal had the approval of the maker.

In the early New York case of *Markle* v. *Hatfield*, 2 Johnson, 455, Chief Justice Kent passed upon the claim that a debt had been extinguished by acceptance of a bill which proved to be invalid—a counterfeit. He said: "The justice of this case is clearly with the defendant in error. . . . It would be a matter of regret, if the law obliged us to regard a payment in counterfeit as a valid payment of a debt. . . . The reasonable doctrine, and one which undoubtedly agrees with the common sense of mankind, is laid down by Paulus in the Digest; and has been incorporated in the French law. He says, that if a creditor received by mistake anything in payment, different from what was due . . . the debtor is not discharged, and the creditor, upon offering to return that which he received, may demand that which is due."

According to the allegations of the bill in this case the equities are with the appellee bank, which has parted with its money and not been repaid, and upon both principle and authority, the demurrer was properly overruled by the Chancellor. His decree is sustained and the cause remanded for further proceedings.