ISABELLE GALES, as Executrix of EVA BERNSTEIN, Deceased, Plaintiff, v. DANIEL FRANK, Defendant.

Supreme Court, Trial Term, New York County, April 7, 1953.

*Alvin J. Burnett* and *Harris L. Present* for plaintiff.

*Samuel J. Perlman* for defendant.

WALTER, J.  On December 6, 1948, defendant executed a note by which he promised to pay to the order of plaintiff's testatrix one year after date $1,000 with 6% interest.  One year later he executed a second note by which he promised to pay to the order of plaintiff's testatrix on August 15, 1950, $1,000 with 6% interest.  There is no evidence as to what transaction gave rise to either note — an absence which is regrettable but perhaps necessitated by the death of the payee and the consequent

inability of defendant to testify to any personal transaction or conversation with her.

On August 14, 1950, defendant went to the office of an attorney representing plaintiff as executrix of the will of the payee and asked for time within which to pay a part of the note coming due on August 15, 1950. The attorney showed defendant both notes. Defendant says that he then stated that the second note was a renewal of the first one. According to the testimony of the attorney, defendant said he had paid the first note and could produce papers and witnesses to prove it, but no such paper or witness was produced.

At that meeting of August 14, 1950, between defendant and plaintiff's attorney, defendant paid $541.25 and signed a paper by which he consented to the entry of judgment against him for $520 if he did not pay that amount by December 15, 1950. That paper contains the statement over defendant's signature that in exchange for the second note he received from plaintiff's testatrix $1,000, but the paper concededly did not contain that statement when defendant signed it. He signed a printed form of confession of judgment with only the words and figures $520 filled in as the amount for which judgment might be entered. All the rest was inserted in the paper by plaintiff's attorney after defendant had signed the paper and left the attorney's office.

Defendant paid another $520 on or before December 15, 1950, and received back his second note, which his attorney produced upon the trial. The first note was produced upon the trial by plaintiff, who testified that she found it among the papers of her testatrix, and it is that note upon which the action is brought.

The defenses pleaded are that the second note is a renewal note accepted in lieu and in extinguishment of the obligation upon the first note; and that the payment of the second note was an accord and satisfaction of all claims.

How the figures of $541.25 and $520 were arrived at is not disclosed; but in the absence of any evidence to the contrary I think it must be assumed that the $41.25 and $20 were the result of some calculation of interest and that defendant hence must be deemed to have paid $61.25 on account of interest.

The situation thus is that defendant has executed two notes for $1,000 each and has paid $1,000, which, in form at least, was payment of the second note, and now finds himself sued upon the first note; and the question is whether or not upon those facts alone plaintiff is entitled to recover another $1,000.

As the notes are negotiable in form, there is a presumption that each was issued for a valuable consideration (Negotiable Instruments Law, § 50), and the usual rule is that in an action by the payee of a note against the maker thereof the payee makes out a prima facie case by producing and offering the note in evidence, proving defendant's signature thereto, and proving nonpayment thereof at maturity, and consequently is entitled to judgment for the face amount of the note, or notes sued on, unless the defendant affirmatively establishes payment or want or failure of consideration or some other legal defense.

It also is at least generally true that, in the absence of some evidence to the contrary, the giving of a renewal note is not in itself evidence of payment of the original note in renewal of which it was given (*Garfield Nat. Bank* v. *Wallach*, 223 App. Div. 303; 8 C. J., Bills and Notes, § 793, p. 569; 52 A. L. R. 1416; Am. & Eng. Ann. Cas. 1915 A, 1084).

But an antecedent or pre-existing debt constitutes value (Negotiable Instruments Law, § 51); and the giving of a renewal note is such a common way of expressing an agreement for an extension of time of payment, without adding to the amount of the obligation, that I am of the opinion that where there is a second note by the same maker to the same payee for the same amount given at or about the time of the maturity of the first note, there is at least a presumption that the only consideration for the second note was the pre-existing debt evidenced by the first note and that the second note was given merely as evidence of an agreement for an extension of time of payment and not as evidence of an additional obligation to pay an additional sum of money; and that in order to recover more than the sum of money expressed in the one note the plaintiff payee must adduce evidence of some consideration independent of another note of the same maker to the same payee for the same amount.

Banks, for example, have such a fetish against carrying overdue paper that they are meticulous about obtaining renewal notes for the sole purpose of extending the time of payment, without any thought of creating additional obligations, but are not nearly so meticulous about surrendering, or stamping as paid, the matured notes which are so renewed. Persons less versed in business practice are even less meticulous about getting back matured notes for which renewals have been given, and I think it would be dangerously unjust to sanction a rule under which such a situation as is here presented the payee may recover the amount of both notes without proof that there were

in fact transactions which gave rise to an actual debt of $2,000.

I do not hold that the mere giving of a renewal note constitutes payment of the first note or an extinguishment of the obligation thereof. I do not question plaintiff's right to sue upon the earlier note, even though the later one concededly was paid; and I do not hold that defendant has proved that the earlier note has been paid. A note, after all, is not the debt itself; it is merely evidence of the debt; and my holding is that two notes by the same maker to the same payee for the same amount, one of which was given upon the maturity of the other, are, prima facie, merely two evidences of one debt and not evidence of two debts, and in order to recover more than the face amount of one note the payee must adduce some evidence that there in some way came into existence a debt in excess of that evidenced by one note alone.

Perhaps one way of expressing my holding is to say that proof that the same maker gave the same payee two notes for the same amount, the second one being given at or about the time of the maturity of the first note, constitutes at least prima facie proof that the second note was given for a consideration which the law does not recognize as sufficient to sustain a promise to pay the sum stated in the second note in addition to the sum stated in the first note, and that plaintiff cannot recover more than the amount of one note because her own evidence shows no legal consideration for a promise to pay more (see *Blanshan* v. *Russell*, 32 App. Div. 103, 105, affd. on opinion below 161 N. Y. 629).

The statement in the confession of judgment that in exchange for the second note defendant received from the payee $1,000 led me to submit to the jury the question whether plaintiff had adduced some evidence of a debt in excess of the amount of the first note, my thought being that although that statement was not in the confession when defendant signed it the jury reasonably might infer that it actually was in accord with what defendant had said to the attorney who wrote the statement in the confession after defendant had signed it, and that if the jury did so infer they reasonably could take the statement as an admission by defendant that there was a consideration for the second note in addition to the consideration afforded by the existing debt evidenced by the first note.

Upon more deliberate reflection than was possible during the trial I see that even the statement as written in the confession of judgment is consistent with the idea that the $1,000

there said to have been received in exchange for the second note was received merely in the form of an extinguishment of defendant's liability upon the first note and hence is not necessarily an admission that the second note is supported by a consideration independent of and in addition to the existing debt evidenced by the first note.

The fact that the idea that liability on the first note was extinguished upon the giving of the second note is not technically correct is immaterial. The point is that the statement as made is not upon its face an admission by defendant that the second note is supported by a valuable consideration independent of the first note. It would not be at all unnatural for a layman who had given a renewal note for no consideration other than the debt evidenced by the first note to assert, when presented with the two notes, that the first one had been paid by the giving of the second one, or to say that upon the giving of the second one his liability on the first one had been extinguished; and if a layman undertook to express the latter idea it is not at all improbable that he would use words which his hearer would honestly think were accurately expressed in the statement which plaintiff's attorney wrote in the confession of judgment in this case.

The jury's verdict for plaintiff for $1,000 thus rests upon an inference that the statement as it appears in the confession of judgment is a correct rendition by plaintiff's attorney of what defendant said to that attorney, and the further inference that the statement means that upon the giving of the second note defendant received from plaintiff's testatrix $1,000 in some form independent of and distinct from the first note.

As the building of inference upon inference in that way is not permissible, the verdict of the jury cannot stand, and as there is no other evidence upon which their finding can rest, it follows that I erred in submitting the question to the jury at all.

The claim that what took place between defendant and plaintiff's attorney in August, 1950, amounted to an accord and satisfaction was not seriously pressed by defendant's counsel upon the trial and I did not submit to the jury any question in connection with it. The situation as to it seems to be this: By showing defendant the two notes plaintiff's attorney in effect demanded payment of both. Defendant countered with what was in effect an assertion that he owed not $2,000 but $1,000 only. The attorney's act in asking for a confession of judgment for only $520 is at least indicative of an assent to defendant's assertion. On the other hand, he did not return the first note, so

that perhaps the most that can be said is that there is a disputed question of fact as to whether all that was said and done did or did not amount to an accord and satisfaction.

As I am setting aside the jury's verdict because I think there is no evidence to sustain it, I properly now could grant defendant's motion to direct a verdict for plaintiff for the unpaid part of 6% interest on $1,000 from December 6, 1948 (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241, 245; Civ. Prac. Act, § 457-a).

I am inclined to think, however, that a new trial may result in a more satisfactory development of the facts on both sides and that in the interest of justice both sides should be accorded an opportunity for a new trial if either party desires it.

The motion to set aside the verdict is accordingly granted, and a new trial will be ordered unless both sides advise me that in lieu of a new trial they prefer that I grant defendant's motion for the direction of a verdict for plaintiff for 6% interest on $1,000 from December 6, 1948, less the $61.25 already paid on account of such interest. In that event that motion will be granted. I compute such interest to date to be $260 and deducting $61.25 from that there remains $198.75.

Counsel have not cited, and I have not found, any case which holds as I am holding. But neither has counsel cited, nor have I found, any case which holds contrary to my holding. A veritable multitude of cases have held that a renewal note operates only as an extension of time of payment (52 A. L. R. 1421; Am. & Eng. Ann. Cas. 1915 A 1086; *Twelfth Ward Bank* v. *Samuels,* 71 App. Div. 168, 170, affd. *sub nom. Twelfth Ward Bank* v. *Schauffler,* 176 N. Y. 593; *Matter of Utica Nat. Brewing Co.,* 154 N. Y. 268, 272); and it also has been expressly held that a renewal note does not create a new indebtedness (*Griffin* v. *Long,* 96 Ark. 268, 271, 272; *Bank* v. *Bridgers,* 98 N. C. 67, 72); and my view seems to me to accord with common business practice and justice. (See, also, *Winsted Bank* v. *Webb,* 39 N. Y. 325.)