COMMERCE UNION BANK,
Plaintiff-Appellant,

v.

BURGER–IN–A–POUCH, INC., the Best of Both, Inc., Kenneth H. Mitchell, Linda S. Mitchell, Jimmy L. Darnell, Eugene Gilley, Defendants-Appellees,

and

Billy G. Heatherly, Appellee.

Supreme Court of Tennessee,
at Nashville.

Sept. 6, 1983.

Joe M. Haynes, Goodlettsville, for plaintiff-appellant.

Denty Cheatham, Cheatham & Palermo, Nashville, for defendants-appellees.

## OPINION

ALLISON B. HUMPHREYS, Special Justice.

This case is before this Court on appeal from the Court of Appeals. It arises under the uniform negotiable instrument law, a part of the Uniform Commercial Code, T.C.A. §§ 47–1–101 *et seq.* It involves a $24,900 promissory note of a corporation first named Burger-in-a-Pouch, a name later changed to Best of Both, and a surety contract signed by appellee Heatherly and others, guaranteeing absolutely and unconditionally the payment to appellant bank of that note. This contract is appended to this opinion.

On September 27, 1976, appellee Heatherly, at that time a stockholder in, and president of, the debtor corporation, together with the other stockholders and officers, Kenneth H. Mitchell, and Jimmy L. Darnell, and Mitchell's wife, Linda S. Mitchell, signed a contract guaranteeing payment of $25,000 to appellant bank in consideration of money loaned, and to be loaned, to the debtor corporation. At that time the debtor corporation owed appellant $25,000, $13,-000 of which had been borrowed after appellee Heatherly joined the corporation.

Heatherly, Mitchell and Darnell disagreed about the management of the corporation and Heatherly resigned and supposedly disposed of his stock. This is not clear from the record, but it is immaterial. This happened in February 1977. In April of 1978 the corporate charter of the debtor corporation was forfeited for non-payment of state franchise taxes. Subsequent to appellee's resignation and the charter forfeiture, Mitchell and Darnell signed notes in their name and in the name of the defunct corporation renewing the original $25,000 note. Appellee Heatherly did not sign any renewal notes expressly refusing appellant bank's request that he do so, advising the bank at that time that he had no further connection with the corporate enterprise.

In July 1980 this suit was brought to recover $24,900, the balance owing on the debt, and interest and attorney's fees. All

of the parties who had signed the notes and surety contracts were made defendants. None of these parties except appellee Heatherly defended the suit, and judgment was taken against them. The other parties not having appealed, have no interest in these proceedings.

The trial court held appellee liable on his surety contract and awarded the bank judgment for the principal, $24,900, and interest and attorney's fees in the amount of $8,408.76. Appellee Heatherly appealed and the Court of Appeals reversed, holding:

Under the circumstances of this case, this Court has determined that the surrender of the old corporate note in exchange for the new note on which the corporation was not liable, effectively discharged the obligation of the former corporation and the dependent obligation of the guarantor.

This Court granted an appeal for a review of this holding. We reverse.

■ The law in Tennessee, long and well-settled, is that a renewal note does not discharge the original note unless all of the parties thereto agree that the renewal is to have this effect. *First National Bank of Sparta v. Yowell,* 155 Tenn. 430, 294 S.W. 1101 (1926); *First National Bank of Sparta v. Hunter,* 22 Tenn.App. 626, 125 S.W.2d 183 (1938).

In *Yowell,* Yowell owed the bank on a note. He renewed the note and the old note was marked paid and surrendered. The renewed note incorporated an increased rate of interest, a material alteration made upon the representation of an endorser on the note who arranged for its renewal. Although the bank was refused recovery on the materially altered note, this being in accordance with a provision of the uniform negotiable instrument law, it was allowed recovery on the original note, the holding being that the original note was not affected by the renewal note.

*Yowell* quotes with approval from the annotation to *State Bank v. Mutual Tel. Co.,* 123 Minn. 314, 143 N.W. 912 (1913), the following:

"[t]he authorities are agreed that whether a renewal note operates as a discharge of the note of which it is a renewal is dependent on the intention of the parties." 155 Tenn. at 437–38, 294 S.W. 1101.

*Yowell* also holds that "where the renewal note is invalid it does not operate to discharge the original note." *Id.* at 438, 294 S.W. 1101.

In *Hunter,* the case was that one partner after the death of the other partner renewed a partnership note in his name and in the name of the partnership. The holding was that although the renewal note did not bind the deceased partner's estate, the estate remained liable on the original note or on the debt. *Yowell* is quoted as authority. In this case certiorari to this Court was refused. *Hunter* mentions that *Yowell* is annotated in 52 A.L.R. 1416 quoting a note in the annotation holding: "The authorities are agreed that whether a renewal note operates as a discharge of a note of which it is a renewal is dependent on the intention of the parties. It is a question of fact, not of law."

*Dies, et al. v. Wilson County Bank,* 129 Tenn. 89, 165 S.W. 248 (1913), citing *Sharp v. Fly,* 68 Tenn. 4 (1876), holds that the burden of proof to show a novation of a note because of a later made note, is upon the party asserting there has been a novation. *Dies* also says on authority of an old Court of Chancery Appeals case, *Bowman v. Rector,* 59 S.W. 389 (Chan.App.1900), that there is a presumption that the old note is extinguished by the later one. We are of the opinion, however, that, because of the common custom at the present time of renewing notes without the intention of either discharging the old note or working a novation we are presented with a situation different from that existing at the time this presumption was said to arise.

■ In 29 Am.Jur.2d *Evidence* § 162, it is said a presumption of fact or inference cannot ordinarily be raised from a fact proved unless a rational connection exists between such proved fact and the ultimate facts to be presumed. *Cox v. Nance,* 24

Tenn.App. 304, 143 S.W.2d 897 (1940) is among the cases cited to sustain this proposition. Stated another way, the rule is that a fact can be regarded as raising a presumption only where human experience makes this a probable or natural explanation of the fact. Again, a presumption of fact arises from the commonly accepted experiences of mankind and inferences which reasonable men would draw from these experiences. 29 Am.Jur.2d § 161. The text here is supported by citation of *Berretta v. American Casualty Company*, 181 Tenn. 118, 178 S.W.2d 753 (1944). These statements about the basis of a presumption raise the question: what is the reasoning that makes it probable that the renewal note in this case was intended to extinguish the old note? There isn't any.

As it is the law that a renewal note does not discharge the original note unless this is intended, and it is against reason to presume that a creditor would act against his own interest by accepting a renewal note with intent to discharge an original note, and so release a solvent surety; and as it is the common practice of which the Court will take notice for lenders to extend payment of original notes by renewal notes, we are compelled to the conclusion that there is no presumption that the renewal note extinguishes the old, so we decline to follow *Dies, supra* in this respect. Cases supporting this holding are *Darby v. Farmer's State Bank*, 253 S.W. 341 (Tex.Civ.App. 1923); *Cotton v. Atlas National Bank*, 145 Mass. 43, 12 N.E. 850 (1887); *Bonestell v. Bowie*, 128 Cal. 511, 61 P. 78 (1900); *State Bank v. Mutual Tel. Co.*, 123 Minn. 314, 143 N.W. 912 (1913); *Bank of Monongahela Valley v. Weston*, 159 N.Y. 201, 54 N.E. 40 (1899); *Mentzer v. Burlingame*, 78 Kan. 219, 97 P. 371 (1908); *Gales v. Frank*, 203 Misc. 902, 121 N.Y.S.2d 435 (1953).

Absent presumptions on either side, where do the facts lead? The appellee offered no proof at all as to the intention of the parties. Although he could have called Darnell or Mitchell, the makers of the original and renewal notes, to testify about intent, he didn't. So there is not only no evidence on his side, there is at least a warranted inference that these parties may not have testified in his favor. This inference is weakened by the fact that relations between appellee and these two were strained, but there is still the presumption they would have told the truth and the burden being on appellee to prove the intent was to discharge the original note and release the surety he should have called them, or, at least, explained why he did not.

On the other hand, appellant bank retained possession of the security contract, producing it at the trial. The last renewal note included a reference to the security contract, indicating that in the minds of the appellant and the maker the original note and contract were not to be affected by the renewal. Finally, the appellant bank evinced an intention not to discharge the original note by asking appellee from time-to-time to sign renewal notes.

All of this, together with the proposition that it would have been per se absurd for appellant to take a renewal note from two doubtful debtors with intent to release a solvent debtor, proves to this Court that it was not the intention of the parties to discharge the original note by the making and acceptance of the renewal note. The appellant bank has borne the burden of proof on this issue.

The forfeiture of the corporate charter had no effect on the validity of the original note or on the contract guaranteeing satisfaction of the debt. Discharge from liability on a promissory note can only be obtained as provided in T.C.A. §§ 47–3–601 et seq. relating to discharge from liability on negotiable instruments. It is evident from reading these statutes that they do not operate in this case. As it is in the public interest that the law regarding the discharge of negotiable instruments be settled, we hold that these statutes are exclusive, and that discharge of negotiable instruments can be obtained only as provided therein. 11 Am.Jur.2d *Bills and Notes* § 903, *Kotzman v. Condit*, 169 Okl. 422, 37 P.2d 412 (1934), 98 A.L.R. 290, *Bank of*

*Sutton v. Skidmore,* 113 W.Va. 25, 167 S.E. 144 (1932).

■ The answer to the implication of the Court of Appeals' opinion that the renewal note in the name of the defunct corporation was invalid and so discharged the original note is found in the holding in *Yowell, supra,* that "where the renewal note is invalid it does not operate to discharge the original note." *Id.* 155 Tenn. at 438, 294 S.W. 1101.

■ A question bitterly contested by the parties in their briefs is whether or not the agreement sued on is one of suretyship or guaranty. The distinction between these two at the common law is that a surety is primarily liable while a guarantor is secondarily liable. This distinction has been virtually abolished by new provisions of the Uniform Commercial Code. T.C.A. § 47–1–201(40) provides that the word "surety" includes guarantor. T.C.A. § 47–3–416 provides in part:

> *Contract of guarantor.*—(1) "Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.

The comment to the official text says with respect to this section:

> "The section is new. It states the commercial understanding as to the meaning and effect of words of guaranty added to a signature.
>
> An indorser who guarantees payment waives not only presentment, notice of dishonor and protest, but also all demand upon the maker or drawee. Words of guaranty do not affect the character of the indorsement as an indorsement (Section 3–202(4)); but the liability of the indorser becomes indistinguishable from that of a co-maker." .

It will be observed that, to the extent applicable, this new provision abolishes the distinction between suretyship and guarantyship, making a guarantor as primarily liable as a surety.

Cases dealing with the effect of § 3–416 have been collected and analyzed in an annotation in 10 A.L.R. 4th 897. In general, the cases annotated carry out the intent of the statute as indicated by the above comment to the official text.

■ The only question dealt with in this annotation of interest here is whether the guaranty must appear on the note in order for § 3–416 to apply. As to this the annotator writes that some courts have reached the conclusion that the guaranty arrangements would only apply under § 3–416 if they were added to a signature on the instrument, but another court has stated that the instrument and its contract of guaranty could not be considered to be separate and distinct when determining the extent of a guarantor's liability. In this case, *Hopkins v. First Nat. Bank,* 551 S.W.2d 343 (Tex. 1977):

> "It appeared that the bank, attempting to collect a note which was past due and which had not been paid, had sued the guarantor and others on their contract of guaranty. The guaranty had been executed at the same time as the note, and provided that the guarantors unconditionally guaranteed the payment of the note and all other obligations of the debtor to the bank then or thereafter existing. The court stated that it was true that a note and a guaranty of payment were separate undertakings in the sense that the guarantor could be sued apart from the maker. This was true, the court continued, because a guarantor of payment is primarily liable; he waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty. However, the court further stated, a note and its absolute guaranty could not be considered to be 'separate and distinct' when determining the extent of the guarantor's liability. The court explained that under § 3–416, the terms in the note had to be examined to ascertain the guarantor's obligations under the unconditional guaranty, for by that guaranty he agreed to pay the instrument according to its terms if it was not paid

when due. The guarantor's contract, the court concluded, thus included all of the note's terms when the guaranty was absolute and unconditional." 10 A.L.R. 4th *Guaranty Contracts* § 3–416 at 909–10.

While we think that a guaranty by a separate instrument which is made a part of a note by reference thereto on this note, would make § 3–416 apply, we do not have to decide this question in this case. Here, the appellee assumed primary liability to pay the note both as surety and guarantor, merging the nature of the two into the greater, that of surety, and since neither the note nor the instrument have been discharged, appellee remains primarily liable according to his clear and express undertaking in the suretyship agreement.

The suretyship contract binds appellee to pay interest, and attorney's fees for the collection of the note. As he is bound by this contract, he is subject to judgment for these items.

The judgment of the Court of Appeals is reversed and set aside. The judgment of the Chancery Court of Davidson County is reinstated. The case is remanded to the Chancery Court of Davidson County for the fixing of attorney's fees for appellant's attorneys for this appeal. The costs of the case and the appeals are adjudged against appellee Heatherly.

FONES, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.

## APPENDIX

CU 27 R5-72

## SURETYSHIP AGREEMENT

FOR VALUE RECEIVED. And in consideration of credit given, or to be given, advances made or to be made, or other financial accommodation from time to time afforded or to be afforded to *Burger Inn A Pouch*

(hereinafter called the "Debtor"), by COMMERCE UNION BANK, a Tennessee banking corporation, or its successors, endorsees, transferees and assigns (all of which are hereinafter called the "Bank"), the undersigned hereby jointly and severally, for themselves, their heirs, executors, administrators and successors guarantee the full and prompt payment to said Bank at maturity and at all times thereafter of any and all indebtedness, obligations and liabilities of every kind and nature (all of which are hereinafter collectively referred to as "indebtedness"), however created, arising or evidenced, of said Debtor to said Bank (including all liabilities of any partnership created or arising while the Debtor may have been or may be a member thereof), whether now existing or hereafter created or arising, whether direct or indirect, absolute or contingent, joint or several, and howsoever owned, held or acquired, whether through discount, overdraft, purchase, direct loan or as collateral, or otherwise; together with all expenses, legal and/or otherwise (including court costs and attorney's fees) incurred by said Bank in collecting or endeavoring to collect such indebtedness or any part thereof, in protecting any collateral, and in enforcing this suretyship agreement. The right of recovery, however, against each of the undersigned is limited to *Twenty-five Thousand and 00/00* — DOLLARS ($ *25,000.00* ), plus interest on all loans and/or advances hereunder and all expenses hereinbefore mentioned.

This suretyship shall be a continuing, absolute and unconditional guaranty, and shall apply to and cover all loans, discounts or renewals thereof made by the Bank to the Debtor and any and all indebtedness, of any nature and howsoever arising or created or evidenced, owing to said Bank by said Debtor, and *17th & Church St. office* shall remain in full force and effect until written notice of its discontinuance, addressed to the of said Bank, shall be actually received by said Bank (the burden of proof of receipt by said Bank of such notice being in all cases upon the undersigned), and also until any and all said indebtedness, or any extensions or renewals thereof, existing before receipt of such notice, and expenses in connection therewith, shall be fully paid. The death, dissolution or withdrawal of any one or more of the undersigned shall not terminate this suretyship until notice of any such deaths, dissolution or withdrawal, given as above provided, shall have actually been received by such Bank, nor until all of said indebtedness, or any extensions or renewals thereof, existing before receipt of such notice shall be fully paid. And in the event of any such death, dissolution or withdrawal and notice thereof to the Bank, this suretyship shall, notwithstanding, continue and remain in force against the survivor or survivors, or the remainder, of the undersigned until discontinued as hereinabove provided.

The said Bank is hereby expressly authorized to make from time to time, without notice to anyone, any extensions, renewals, sales, pledges, surrenders, compromises, settlements, releases, indulgences, alterations, substitutions, exchanges, changes in, modifications, or other dispositions, of all or any part of said indebtedness, either express or implied, or of any contracts or instruments evidencing any thereof, or of any security or collateral therefor, and/or to take any security for or other guarantees upon any of said indebtedness, and the liability of the undersigned hereunder shall not be in any manner affected, diminished or impaired thereby, or by any lack of diligence, failure, neglect or omission on the part of said Bank to make any demand or protest, or give any notice of dishonor or default, or to realize upon or protect any of said indebtedness, or any collateral or security therefor, or to exercise any lien upon or right of appropriation or set-off of any moneys, accounts, credits, or property of said Debtor, possessed by said Bank, towards the liquidation of said indebtedness, or by any application of payments or credits thereon. Said Bank shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on said indebtedness, or any part thereof, and shall be under no obligation, at any time, to first resort to, make demand on, file claim against, or exhaust its remedies against the Debtor, any one or more of the undersigned, or other persons or corporations, their properties or estates, or to resort to or exhaust its remedies against any collateral, security, property, liens or other rights whatsoever. It is expressly agreed that said Bank may at any time make demand for payment on, or bring suit against, the undersigned sureties, jointly or severally, or any one or more of the undersigned, less than all, and may compound with any one or more of the undersigned for such sums or on such terms as it may see fit and release such of the undersigned from all further liability to the Bank hereunder, without thereby impairing the rights of the Bank in any respect to demand, sue for and collect the balance of the indebtedness from any of the undersigned sureties not so released, and that any claims against Debtor accruing to the undersigned by reason of payments made hereunder shall be subordinate to any indebtedness then or subsequently owed by Debtor to the Bank. As security for the undertakings and obligations of the undersigned hereunder, the undersigned and each of them expressly grant and give to said Bank a right of immediate set-off, without demand or notice, of the balance of every demand deposit account or savings account now or at any time hereafter existing of the undersigned with the Bank, and a general lien upon all money, negotiable instruments, commercial paper, notes, bonds, stocks, credits and/or choses in action, or any interest therein, and any other property, rights and interests of the undersigned or any evidence thereof, which have or at any time shall come into the possession, custody or control of the Bank, and, in the event of default hereunder, said Bank may sell or cause to be sold, in the City of Nashville, Tennessee, or elsewhere, at public or private sale in any manner which may be lawful, for cash or credit and upon such terms as such Bank may see fit, and without demand or notice to the undersigned, all or any of such security, and such Bank or any other person may purchase such property, rights or interests so sold and thereafter hold the same free of any claim or right of whatsoever kind, including any right or equity of redemption, of the undersigned, such demand, notice or right or equity of redemption being hereby expressly waived and released.

In event of the death, incompetency, dissolution, liquidation, insolvency (however evidenced) of, or institution of bankruptcy or receivership proceedings by or against the Debtor, all of the indebtedness of Debtor then existing shall, for the purposes of this suretyship and at the option of the Bank, immediately become due and payable from the undersigned; and, in such event, any and all sums or payments of any nature which may be or become due and payable by the Debtor to any of the undersigned are hereby assigned to said Bank, and shall be collectible by said Bank, without necessity for other authority than this instrument, until all such indebtedness of the Debtor to the Bank shall be fully paid and discharged, but such collection by the Bank shall not in any respect affect, impair or diminish any other rights of said Bank hereunder.

The granting of credit from time to time by said Bank to said Debtor, in excess of the amount to which right of recovery under this suretyship is limited and without notice to the undersigned, is hereby expressly authorized and shall in no way affect or impair this suretyship; and, in event that the indebtedness of the Debtor to the Bank shall so exceed the amount to which this suretyship is limited, any payments by the Debtor or any collections or recovery by the Bank from any sources other than this suretyship may first be applied by the Bank to any portion of the indebtedness which exceeds the limits of this suretyship.

Said Bank may, without any notice whatsoever to anyone, sell, assign or transfer all or any part of said indebtedness, and in that event each and every immediate and successive assignee, transferee or holder of all or any part of said indebtedness shall have the right to enforce this suretyship, by suit or otherwise, for the benefit of such assignee, transferee or holder, as fully as though such assignee, transferee or holder were herein by name given such rights, powers and benefits; but the said Bank shall have an unimpaired right, prior and superior to that of any said assignee, transferee or holder, to enforce this suretyship for the benefit of said Bank, as to so much of said indebtedness that it has not sold, assigned or transferred.

No act of commission or omission of any kind, or at any time, on the part of said Bank in respect of any matter whatsoever shall in any way affect or impair this suretyship. This suretyship is in addition to and not in substitution for or discharge of any other suretyship held by the Bank.

This suretyship and every part thereof shall be binding upon the undersigned, jointly and severally, and upon their respective heirs, legal representatives, successors and assigns, as fully as though everywhere specifically mentioned, and shall be construed according to the local laws of the State of Tennessee, in which State it shall be performed by the undersigned.

WITNESS Our respective signatures, and the acceptance hereof by said Bank, this _27_ day of _Sept._, 19 _76_.